**ESTATE of Rochester H. ROGERS, Deceased, et al., Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

**No. 747, Docket 35500.**

United States Court of Appeals, Second Circuit.

Argued June 2, 1971.

Decided June 18, 1971.

Rubin, Levey & Battaglia, Rochester, N. Y. (Sydney R. Rubin, Rochester, N. Y., of counsel), for appellants.

Johnnie M. Walters, Asst. Atty. Gen., Dept. of Justice (Meyer Rothwacks, William A. Friedlander, Borden S. Gilman, Attys., Tax Div., Dept. of Justice, of counsel), for appellee.

Before CLARK, Associate Justice,* SMITH, Circuit Judge, and ZAVATT, District Judge.**

PER CURIAM:

The complicated facts of this case on appeal belie the exceedingly simple issue which it presents: whether the Tax Court's finding in its order filed July 8, 1970, that the unadjusted basis of property bought in 1946 was $105,000.00, was clearly erroneous, C. I. R. v. Duber-

---

* United States Supreme Court, Retired, sitting by designation.

** Of the District Court for the Eastern District of New York, sitting by designation.

stein, 363 U.S. 278, 80 S.Ct. 1190, 4 L. Ed.2d 1218 (1960), 26 U.S.C. § 7482(a).

A full statement of the facts, all of which are stipulated to and are not in dispute, is contained in the Appendix (16–25) and is set forth exhaustively in the opinion of the Tax Court, Appendix (45–51). Stripped to the essentials, the relevant facts are as follows: On January 7, 1946, the taxpayer sold real property located in Rochester, New York, for a total price of $165,000.00, $100,000.00 of which was paid by the purchaser in the form of a fifteen-year instalment purchase money second mortgage (hereinafter, the Monroe-Rutgers mortgage); this mortgage provided for quarter-annual principal payments of $500.00, with interest at the rate of 4% per annum. On May 17, 1946, taxpayer purchased the "Mohican Property" from Realworth Properties, Inc., for a contract price of $105,000.00, subject to a first mortgage of $60,000.00. The balance of the purchase price was paid by the assignment of the Monroe-Rutgers mortgage, which, although having a face value of $99,500.-00, was stated in the contract of sale as having "Value of mortgage $45,000"; this transaction was negotiated for the taxpayer by her husband and by one Reuben Goldman, the attorney for the seller, both of whom had substantial experience in prior arm's length real estate transactions. The taxpayer did not claim a loss for having assigned the mortgage in 1946 at a stated value of $45,000.00, as she had a right to do. On October 1, 1963, the taxpayer sold the "Mohican Property" for $114,500.00. The Commissioner and the Tax Court, after making appropriate adjustments to basis, found a gain on this sale of $19,-493.54 and deficiencies for the tax years 1963 and 1964.

Taxpayer claims that the Commissioner erred in his finding that the unadjusted basis of the "Mohican Property" was $105,000.00 as stated in the contract when purchased in 1946; that, if the Commissioner had used the fair market value of this property, taxpayer would have suffered a loss of $35,006.46 when the property was ultimately sold in 1963 (instead of a gain as determined by the Commissioner), which loss could have been used to offset other taxable income for that year. Basically, the taxpayer argues that the fair market value of the "Mohican Property" in 1946 was $159,-500.00 and not $105,000.00—comprised of the $60,000.00 mortgage which she assumed and $99,500.00, the value she now assigns to the Monroe-Rutgers mortgage. Thus, the issue resolves itself into one question of fact: whether, for tax purposes, the Monroe-Rutgers mortgage was worth $99,500 when she assigned it to the person from whom she bought the "Mohican Property" in 1946 or $45,000.00 which she allocated as the value thereof, through the agency of her husband, in the contract of purchase.

In this Circuit, the rule is,

that when the parties to a transaction * * * have specifically set out the covenants in the contract and have *there given them an assigned value, strong proof must be adduced by them in order to overcome that declaration.* * * * (emphasis added) Ullman v. C. I. R., 264 F.2d 305, 308 (2d Cir. 1959).

See also Seas Shipping Company, 371 F.2d 528 (2d Cir.), cert. denied, 387 U. S. 943, 87 S.Ct. 2076, 18 L.Ed.2d 1330 (1967).

The "strong proof" rule was adopted undoubtedly to counteract the tax avoidance possibilities inherent in a situation such as that presented by the instant case. Parties who bargain at arm's length usually consider the tax consequences of their deal (particularly here, where parties experienced in real estate matters did the bargaining before the parties executed the contract with its assigned values). Years later, after the seller, presumably, has gained his tax advantage from the contract (and the statute has run as to him), the purchaser unilaterally seeks to reform the contract to her tax advantage. Regardless of the price for which taxpayer ultimately sold the "Mohican Property," she would gain a tax advantage if she could

now challenge the valuations previously agreed upon in the contract.

Because of this possibility some courts, see e.g., C. I. R. v. Danielson, 378 F.2d 771 (3d Cir.), cert. denied, 389 U.S. 858, 88 S.Ct. 94, 19 L.Ed.2d 123 (1967), have adopted a virtual parol evidence rule—that the taxpayer may not challenge the tax consequences of his agreement unless she can adduce proof, which at common law would enable him to alter the agreement or render it unenforceable on such grounds as mistake, fraud, duress, etc., *Danielson, supra,* 378 F.2d at 775. The Government urges this Circuit to adopt and apply that rule in this case. However, it is not necessary to consider adoption of a new rule, in this case, since appellant has failed to meet the "strong proof" rule enunciated in *Ullman, supra.*

Applying that test to the instant case, the court agrees with the Tax Court that taxpayer has failed to meet her burden. Her evidence was limited. Her husband was deceased, and Goldman, the attorney for the seller, could not remember why the Monroe-Rutgers mortgage was assigned a value far below its face value. Taxpayer relies heavily on evidence of the assessed value of the property for real estate tax purposes made in 1946, which she claims reflects a value of the "Mohican Property" of $143,157.00 in that year (Exhibit 9-I, Appendix 38), and the fact that the Monroe-Rutgers mortgage traded in 1948 for $72,500.00. The Tax Court found that the assessed value failed to take into account "the apparent downward inflexibility of the assessment valuation," and, also, that the 1948 transaction involving the Monroe-Rutgers mortgage was only "slight evidence" of its worth in 1946 and of little value in determining "with any degree of certainty" the value of the "Mohican Property." It concluded that this evidence was not "strong proof" sufficient to overcome the stated value in the contract. We do not find that conclusion clearly erroneous. The decision of the Tax Court, entered July 14, 1970, is affirmed.