MACKEY'S, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Mackey's, Inc. v. Commissioner
Docket No. 493-72.
United States Tax Court
T.C. Memo 1975-280; 1975 Tax Ct. Memo LEXIS 91; 34 T.C.M. (CCH) 1214; T.C.M. (RIA) 750280; September 8, 1975, Filed Jesse Moss, for the petitioner. Russell F. Kurdys and Theodore J. Kletnick, for the respondent. QUEALY
MEMORANDUM FINDINGS OF FACT AND OPINION QUEALY, Judge: Respondent determined deficiencies in Federal income tax and an addition to tax as follows: Addition to Tax Taxable Year Ended
Deficiency
Under Section 6653(a) [1]
August 31, 1967
$15,053.25
August 31, 1968
15,549.24
$777.46
Petitioner concedes that deductions claimed for "Christmas expenses" for the taxable years ended August 31, 1967, and August 31, 1968, were correctly disallowed by the respondent. The issues remaining for decision are: (1) Whether petitioner is entitled to deduct *92 payments made pursuant to a covenant not to compete as ordinary and necessary expenses under section 162, or whether such payments constitute distributions of corporate earnings and profits. (2) Whether petitioner is entitled to deduct payments of "consulting fees" as ordinary and necessary expenses under section 162. (3) Whether petitioner is liable for the addition to the tax under section 6653(a) for the taxable year ended August 31, 1968. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Such facts and the exhibits attached thereto are incorporated herein by this reference. Mackey's, Inc. (hereinafter "petitioner") is a corporation having its principal place of business in New York, New York, at the time the petition was filed in this proceeding. The petitioner filed its corporate Federal income tax returns for its taxable years ended August 31, 1967, and August 31, 1968, with the district director of internal revenue, Manhattan District, New York, using the accrual method of accounting. In 1937 petitioner was incorporated as a theatre ticket agency. Its sole shareholder and president was Louis Schonceit. The only other officer of petitioner *93 was Louis Schonceit's spouse, Renee Schonceit, who served as its vice-president after her marriage to Louis in 1950. In 1965, Louis Schonceit was sixty-five years of age. He had been working in the theatre district of New York City since 1915, had no children by his marriage to Renee Schonceit, and sought to retire in Palma de Mallorca, Spain, where many of his acquaintances either resided or vacationed. Accordingly, on July 16, 1965, an agreement for the sale of a 49 percent interest in the business was entered into between Louis Schonceit and Anthony Garafalo, the then manager of the business. Anthony Garafalo had been associated with the predecessor of petitioner since 1933 and with petitioner after its incorporation, advancing to the position of manager in 1945. At no time prior to 1965 was he an officer or director of petitioner. Pursuant to the agreement, 49 percent of the issued and outstanding capital stock of petitioner was transferred to the purchaser, Anthony Garafalo, in exchange for $20,000, of which $2,000 was to be paid on December 30, 1965 and the remainder in 9 annual installments of $2,000 each with interest at 4 percent per annum. Each installment payment was *94 secured by a non-assignable promissory note made by the purchaser in the form specified in the agreement of sale. The seller, Louis Schonceit, immediately delivered to the purchaser all of the corporation's books, records, and other documents necessary to conduct the business of the corporation. Both parties agreed to do all acts necessary to give effect to the intent underlying the agreement. A second agreement entered into on the same date between Louis Schonceit, Renee Schonceit, and Anthony Garafalo provided that Anthony Garafalo would serve as president and manager of petitioner for an annual salary of $19,240. Louis Schonceit agreed to hold himself available to petitioner as a consultant, for which he would receive $5,000 annually. That agreement further provided that Louis Schonceit and Anthony Garafalo would comprise the entire Board of Directors of petitioner; that Louis and Renee Schonceit would not engage in any activity competitive with that of petitioner in exchange for payment of $23,600 annually to them jointly, or to the survivor thereof, as long as petitioner continued in business; and, that Anthony Garafalo would not convey his interest in petitioner except subject *95 to certain restrictions and conditions set forth in the agreement. Petitioner was not a party to, nor did it ratify, either agreement. On July 25, 1965, Louis and Renee Schonceit moved to Palma de Mallorca, Spain, their new permanent residence. Shortly thereafter, on August 19, 1965, Louis Schonceit suffered a massive stroke which rendered him partially paralyzed. Although his mental health was not thereby impaired, his physical activity was severely restricted, and he remained relatively inactive until his death on May 17, 1970. As of August 31, 1965, the net book value of the capital stock of the petitioner amounted to $186,037.71, as shown by the following balance sheet: ASSETS
Current Assets
Cash in bank and on hand
$113,875.16
Accounts receivable
$ 60,475.01
Less Estimated losses in
collection
1,694.62
58,780.39
Ticket inventory
3,745.50
Prepaid - restrictive covenant
1,050.00
Unexpired insurance premiums
464.99
Total current assets
$177,916.04
Fixed Assets
Furniture and fixtures
5,102.13
Less Depreciation to date
3,453.80
1,648.33
Other Assets
Loans and notes receivable -
officer
47,646.16
Total Assets
$227,210.53
LIABILITIES
Current Liabilities
Accounts payable
$ 21,799.47
Customers' prepayments
2,132.43
Accrued payroll
10,255.00
Taxes Payable
Payroll taxes
$ 1,400.28
Federal excise tax on
admissions
1,567.38
New York City taxes
1,112.67
New York State franchise
603.66
tax
Federal income taxes
2,301.93
6,985.92
Total current Liabilities
$ 41,172.82
Capital
Capital stock
135,000.00
Retained earnings
51,037.71
186,037.71
Total Liabilities and Capital
$227,210.53
*96 For the taxable years ended August 31, 1961 to 1968, inclusive, the net income of petitioner before Federal income taxes, and the amounts deducted on account of the restrictive covenant and the consultation agreement in arriving at such net income, were as shown on the following schedule: Year Ended
Restrictive
Consulting
Net Income August 31
Covenant
Fee
Before Tax
1961
$ 21,672.97
1962
13,078.24
1963
6,095.69
1964
5,090.84
1965
10,493.67
1966
$25,599.93
$ 5,000.04
21,169.12
1967
26,099.92
5,000.04
21,235.77
1968
29,566.58
5,416.71
13,020.87
In his notice of deficiency, respondent disallowed deductions in the amounts of $26,099.92 and $29,566.58 for the taxable years ended August 31, 1967, and August 31, 1968, respectively, for payments made to Louis and Renee Schonceit under the alleged covenant not to compete. The respondent determined that such amounts in fact constituted distributions of corporate earnings and profits rather than ordinary and necessary expenses under section 162. Respondent further disallowed deductions for consulting fees in the amounts of $5,000.04 and $5,416.71 for the taxable years *97 ended August 31, 1967, and August 31, 1968, respectively, again on the grounds that such amounts constituted distributions of corporate earnings and profits. As a result of these disallowances, deficiencies were asserted in the amounts of $15,053.25 and $15,549.24 for the taxable years ended August 31, 1967 and August 31, 1968, respectively. Respondent determined that part of the underpayment of tax for the taxable year ended August 31, 1968 was due to negligence or intentional disregard of the rules and regulations. Accordingly, respondent asserted an addition to tax under section 6653(a) in the amount of $777.46. OPINION Louis Schonceit founded petitioner, owned its entire stock, and had been its president since 1937. In 1965, he was 65 years old, had no children by his marriage to Renee Schonceit, and sought to retire in a community where many business and social acquaintances resided or vacationed, Palma de Mallorca, Spain. Anthony Garafalo had been associated with petitioner since prior to its incorporation and was intimately acquainted with its daily business operations, having actively served as its manager since 1945. In order to effectuate his planned retirement, *98 Louis Schonceit proceeded to sell 49 percent of the stock of petitioner to Anthony Garafalo for a stated consideration of $20,000. A separate and simultaneous agreement provided that Louis and Renee Schonceit, or the survivor thereof, would be paid each year the sum of $23,600 ostensibly for refraining from any activity competitive with that of petitioner, and the additional sum of $5,000 for consultation services. During the taxable years ended August 31, 1967, and August 31, 1968, petitioner deducted payments to the Schonceits in the amounts of $26,099.92 and $29,566.58, respectively, on account of the covenant not to compete. [2] It also deducted the amounts of $5,000.04 and $5,416.71, respectively, paid as consulting fees. In his notice of deficiency the respondent determined that the payments made to Louis Schonceit pursuant to the covenant not to compete constituted non-deductible distributions of corporate earnings and profits. The issue thus presented does not relate to the quantum of proof which must be adduced by one or the other party to an agreement in order *99 to vary its terms. See Estate of Rogers v. Commissioner,445 F.2d 1020 (2nd Cir. 1971). Here the respondent takes the position that the agreements do not represent the real understanding between the parties and the facts fully support that position. The purported sales price of $20,000 for 49 percent of the capital stock of the petitioner would appear to be grossly inadequate. The sales price represented less than 11 percent of the book value of the total outstanding stock and about 16 percent of net current assets. Without the accompanying agreement for the payment of additional sums in the form of the restrictive covenant and consulting fee, Louis Schonceit would not have sold 49 percent of the stock for the stated price. Furthermore, the covenant not to compete merely restricted Louis Schonceit from competing with himself. [3] He still owned 51 percent of the stock of the petitioner. At all times material herein, he was a director. As such, he was not permitted to use his position of trust and confidence to further his private interests. While technically not a trustee, he stood in a fiduciary relationship to the corporation and its minority shareholder, Anthony *100 Garafalo. See George A. Nye,50 T.C. 203 (1968); Foley v. D'Agostino,248 N.Y.S. 2d 121, 128 (App. Div. 1964). He was thus under a pre-existing duty not only to protect the interests of petitioner, but also to refrain from any activity which would injure the corporation, or deprive it of any profit or advantage which his skill and ability might properly bring to it. In view of Louis Schonceit's duties as a corporate director, the provisions of the covenant not to compete appear superfluous. Furthermore, nothing in the record indicates that Louis Schonceit intended to compete with petitioner. In view of his age, and the decreasing extent of his business activity with respect to petitioner during the years after Anthony Garafalo became manager, it cannot be assumed that Louis Schonceit would seek to establish a new business competitive with that of petitioner. In reality, the covenant lacked *101 economic substance and was merely a device to obtain deductions for the corporation for annual distributions in the nature of preferential dividends. Cf. George A. Nye,supra.Petitioner is not therefore entitled to deductions for payments under said covenant as a trade or business expense. In his notice of deficiency respondent likewise determined that payments made to Louis Schonceit as consulting fees were in fact distributions of corporate earnings and profits in the nature of dividends. The burden thus rested upon petitioner to show that such payments were, in fact, compensation for services to be performed by Louis Schonceit, deductible under section 162. Petitioner presented no evidence to show that an effort was made to evaluate the services to be performed by Louis Schonceit, or that it was intended that he render such services. At trial, Anthony Garafalo testified that he was thoroughly familiar with the business of petitioner and that during the ten years prior to his purchase of stock therein he had often been left solely responsible for managing the business while the Schonceits vacationed in various parts of the world. Furthermore, there is no evidence *102 that services were ever performed for the payment of the amounts in question. Shortly after he began his residence in Palma de Mallorca, Louis Schonceit suffered a massive stroke which left him partially paralyzed. As a result his activities were severely restricted until the time of his death in 1970. Furthermore, petitioner has failed to show evidence of correspondence or other communication between Louis Schonceit and Anthony Garafalo during the taxable years in controversy to indicate that consulting services were requested or rendered. [4] The Court thus sustains the determination of the respondent on this issue. The respondent determined that petitioner negligently or intentionally disregarded the rules and regulations in connection with the preparation of its return for the fiscal year ended August 31, 1968. An addition to the tax pursuant to section 6653(a) was asserted for that taxable year. Petitioner failed *103 to introduce any evidence on this issue. Hence, the Court must sustain the respondent on this issue. See Gaylord C. Peters,51 T.C. 226 (1968); David Courtney,28 T.C. 658 (1957); Boynton v. Pedrick,228 F.2d 745 (2nd Cir. 1955), cert. denied, 351 U.S. 938 (1956). Decision will be entered for the respondent.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. The excess over the amount of $23,600 specified in the agreement was deducted as an advance payment.↩
3. Indeed, mere retention by the Schonceits of financial interest in the petitioner would tend to deprive the covenant of economic substance. See Douglas J. Lemery,52 T.C. 367, (1969), affd. 451 F.2d 173↩ (9th Cir., 1971).
4. At trial, Anthony Garafalo was afforded the opportunity to testify as to the nature and extent of his correspondence with the Schonceits in Palma de Mallorca. He was unable to show that such correspondence was more than infrequent and primarily social in nature.↩