VINCENT J. and VIRGINIA MULE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Mule v. Commissioner
Docket No. 7836-79.
United States Tax Court
T.C. Memo 1983-231; 1983 Tax Ct. Memo LEXIS 557; 45 T.C.M. (CCH) 1420; T.C.M. (RIA) 83231; April 27, 1983. Harold J. Boreanaz, for the petitioners. George W. Connelly, Jr., for the respondent. *558 COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined deficiencies in petitioners' income taxes and additions to tax for 1975 and 1976 in the following amounts: Additions to Tax
Year
Deficiencies
Sec. 6651(a) [1]
Sec. 6653(a)
1975
$11,828.16
$449.87
$594.41
1976
303.27
The petition filed herein challenged only respondent's determinations regarding the 1975 taxable year. After concessions, the issues remaining for resolution are: (1) Whether petitioners must report the sale of Vincent J. Mule's insurance agency business in accordance with the terms of the agreement of sale; (2) whether petitioners established their basis in the assets of the insurance agency; (3) whether the delinquent filing of petitioners' 1975 return was due to reasonable cause; and (4) whether a part of any underpayment for 1975 was due to negligence. FINDINGS OF FACT Some of the facts and exhibits are stipulated, and the stipulation is incorporated herein by this *559 reference. Petitioners are husband and wife who resided in Williamsville, New York, when they filed their petition herein. Their 1975 joint income tax return was filed with the Internal Revenue Service Center in Andover, Massachusetts. The income producing activities leading to the alleged deficiencies were conducted by Vincent J. Mule (petitioner). Petitioner began selling life insurance in the Buffalo, New York, area in 1952 while still a college student. He started selling other types of insurance in 1956, and in 1958 he purchased a general insurance agency business from a third party for $1,500. He operated as the Vincent J. Mule Insurance Agency and served as an insurance agent and as a broker. [2]
Petitioner was paid commissions by the insurance carriers on the premiums remitted by those persons who bought insurance from or through petitioner. Petitioner's sales were generated almost exclusively by personal solicitation. Petitioner was also employed during the year in issue as a teacher by the Board of Education, Buffalo, New York. In late *560 1974, petitioner decided to sell the general insurance agency portion of his business, and placed an advertisement to that effect in the Buffalo Evening News during November. Petitioner was contacted later that month by the people who eventually bought the business, and the parties began negotiations. Petitioner was represented by counsel during these negotiations, and the parties discussed the implications of the various provisions of the agreement, which was drafted by counsel for the buyers and included a covenant not to compete. The final terms of the sale, agreed upon after several draft proposals, provided for a purchase price of $39,000 payable entirely in 1975. Of that amount, $34,000 was allocated to the covenant not to compete, and the remainder was allocated to customer lists and goodwill. The agreement includes the following paragraph: C. Seller and Buyers hereby acknowledge that due consideration was given to the tax consequences of this transaction and that both parties will report for tax purposes in accordance with the terms of this agreement. Although petitioner was, under the agreement, expressly prohibited from acting as a general insurance agent, he was *561 permitted to continue acting as a broker. He maintained cordial relationships with the purchasers of his agency and, as a broker, placed new accounts through them. The parties executed the sales agreement on May 6, 1975, and, as provided in the agreement, petitioner was paid $39,000 in 1975. At the time petitioner's 1975 return was prepared, he was unable to calculate the historical cost of what he had sold. The $54,000 claimed as the basis of the agency was his estimate of the value of the assets, rights, and interests in the business that petitioner had sold, rather than his actual, total cost as adjusted. The estimate was based on a formula recognized in the insurance industry for setting the "general average" sales price for an agency, i.e., two and one-half times or three times annual earnings. In this manner, petitioner reported a capital loss of $15,000. Petitioner's return, which was prepared by his accountant, was dated May 8, 1976, and was filed on May 12, 1976. No extensions of time to file were requested by petitioner or his accountant. The accountant died prior to trial of this case. In his notice of deficiency with respect to 1975, respondent disallowed the *562 capital loss from the sale of the agency. He determined that the $34,000 received from the sale of the agency for the covenant not to compete was reportable as ordinary income and the remaining $5,000 was reportable as capital gain. Respondent also determined that petitioner underreported his commission income by $940.10. Additions to tax under sections 6651(a) and 6653(a) were predicated upon petitioner's failure to file his return for 1975 by April 15, 1976, or to secure an extension of time to file, and his negligent or intentional failure to report properly all of his income. OPINION The contract for the sale of the Vincent J. Mule Insurance Agency specifically allocates $34,000 to a covenant not to compete. "[W]hen the parties to a transaction such as this one have specifically set out the covenants in the contract and have there given them an assigned value, strong proof must be adduced by them in order to overcome that declaration." Ullman v. Commissioner,264 F.2d 305, 308 (2d Cir. 1959), affg. 29 T.C. 129 (1957). See also Estate of Rogers v. Commissioner,445 F.2d 1020, 1021 (2d Cir. 1971), affg. a Memorandum Opinion *563 of this Court. Petitioner has failed to satisfy even the less onerous burden of proof, by a preponderance of the evidence, imposed upon him by Rule 142(a), Tax Court Rules of Practice and Procedure.For example, he did not present any evidence showing that the covenant not to compete lacked independent significance. Indeed, petitioner's own testimony was that all of the business for the insurance agency was obtained through petitioner's personal solicitations, thus making a covenant not to compete not only a necessary part of the contract of sale but perhaps the most significant consideration given by the seller. Petitioner did not and apparently could not demonstrate that he was a victim of overreaching by his purchasers. He not only negotiated with them with the aid of a lawyer, he has worked with them since the sale. It is difficult to believe that he would maintain cordial relations with them if he thought they had taken unfair advantage of him. The parties stipulated that petitioner paid $1,500 in 1958 to buy the insurance agency from a third party, and respondent has conceded this amount as petitioner's basis. Sec. 1012. Petitioner did not present any evidence that would *564 increase his basis under section 1016 [3] or would reduce the amount realized under section 1001. Thus, the amount received for the covenant not to compete, $34,000, is taxable as ordinary income, Lazisky v. Commissioner,72 T.C. 495 (1979), affd. on another issue 636 F.2d 11 (1st Cir. 1980), while the amount received for the capital assets, $5,000, is subject to tax after first being reduced by petitioner's adjusted basis in the assets and then by the capital gains deduction of section 1202. The Additions to Tax
Petitioner has the burden of proving that his failure to file was due to reasonable cause and not to willful neglect. Bebb v. Commissioner,36 T.C. 170 (1961); Rule 142(a), Tax Court Rules of Practice and Procedure. Petitioner's 1975 return was filed with the Internal Revenue Service on May 12, 1976. No request for an extension of the filing period was requested or granted on behalf of petitioner. Petitioner testified that *565 he provided his accountant with the necessary information and signed the prepared return prior to the due date and relied upon the accountant to file the return. Although it is true that under some circumstances it has been held that reliance by a taxpayer upon professional advice may constitute the reasonable cause required by section 6651(a) to excuse late filing, petitioner has not persuaded us that the circumstances were sufficient to warrant such reliance. Petitioner testified that he knew his return was due by April 15, 1976; he failed to explain why his return was not mailed by that date or why "5/8/76" appears as the date on his return next to his signature. Accordingly, we must uphold respondent's determination. Respondent also determined that an addition to tax was owing under section 6653(a). This addition to tax is imposed if any part of the underpayment is due to negligence or intentional disregard of the rules and regulations regarding the reporting of income. Petitioner has the burden of showing that he exercised due care in the preparation of his 1975 return and the payment of tax for such year. Cobb v. Commissioner,77 T.C. 1096, 1101 (1981). *566 The Commissioner's determination that some part of the underpayment was due to negligence or intentional disregard is presumptively correct. Reily v. Commissioner,53 T.C. 8, 14 (1969). Petitioner conceded that he failed to report some of his income from commissions on premiums, and he has not explained that error. Petitioner's explanation of his method of calculating his "loss" from the sale of the business is ingenuous; it is so contrary to the recognized means of determining taxable income that it can only be due to negligence or intentional disregard of the law. Respondent's determination on this issue is sustained. Because of concessions by the parties, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue.↩
2. In general, an agent represents the insurance company to the public, and a broker works through the company's agents.↩
3. Petitioner's claim that a $15,000 loss was generated by the sale of his business for $15,000 less than the industry-assigned value is unsupportable under the relevant sections of the Code.↩