T.C. Memo. 2011-33

UNITED STATES TAX COURT

CHC INDUSTRIES, INC., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19627-06.            Filed February 2, 2011.

Thomas H. Moreland and Philip R. Weingold, for petitioner.

John R. Mikalchus, for respondent.

MEMORANDUM OPINION

VASQUEZ, Judge:  Respondent determined that petitioner is liable for $275,800, plus interest as provided by law, as a transferee of St. Augustine II, Inc. (St. Augustine), in respect of a deficiency in St. Augustine's Federal income tax for 2000.

The issue for decision is whether petitioner is liable as a transferee of property of St. Augustine under section 6901.[1]

## Background

The parties submitted this case fully stipulated under Rule 122. The stipulations of facts and the attached exhibits are incorporated herein by this reference. Petitioner's principal place of business was in New York at the time the petition was filed.

Petitioner was incorporated on May 24, 2000. At all times relevant hereto, Nancy Caldarola (Ms. Caldarola) was petitioner's president and sole shareholder. In 1997, a few years before incorporating petitioner, Ms. Caldarola entered into business discussions with Jeffrey Furman (Mr. Furman), cochairman of Fortrend International, L.L.C. (Fortrend).[2] She then began working as an independent consultant to Fortrend.[3] Her role in this capacity was to find companies potentially interested in entering into a transaction with Fortrend. Pursuant to the agreement Ms. Caldarola would be paid a finder's fee if she

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2] We discuss Fortrend in more detail below.

[3] Ms. Caldarola worked as an independent consultant to Fortrend from 1997 to 2003. She has never been a director, officer, partner, or employee of Fortrend or any of its affiliates. Petitioner also has never held an ownership interest in Fortrend or any of its affiliates.

introduced a company to Fortrend that ultimately entered into a transaction with Fortrend or any of its affiliates. The finder's fee would be equal to approximately 10 percent of the gross fee or 25 percent of the net fee realized by Fortrend in the transaction.

In 1999 Ms. Caldarola introduced Fortrend to MidCoast Capital Credit Corp. (MidCoast). This introduction led to the consummation of a transaction in October 2000 (the Taxi Transaction)[4] involving the acquisition by Fortrend or by an affiliate of the stock of Checker Taxi, Inc. (Checker), and Town Taxi, Inc. (Town), from the Frank Sawyer Trust of May 1992.

After the closing of the Taxi Transaction on October 12, 2000, Fortrend agreed, pursuant to discussions between Ms. Caldarola and Mr. Furman, to pay petitioner $275,800 as the finder's fee for introducing MidCoast to Fortrend. The parties have stipulated that this amount represented fair consideration in exchange for the services petitioner provided.[5]

On October 19, 2000, petitioner, at Mr. Furman's direction, submitted an invoice to CDGH, Inc. (CDGH), for $275,800 for

---

[4] See infra pp. 4-5 for a discussion of the Taxi Transaction, which was one of the transactions at the focus of our Opinion in Sawyer Trust v. Commissioner, 133 T.C. 60 (2009).

[5] Although Ms. Caldarola introduced Fortrend to MidCoast before incorporating petitioner, we accept the parties' stipulation that Fortrend agreed to pay the finder's fee to petitioner.

"consulting services rendered for Checker/Town Taxi deal". Petitioner also submitted a second invoice for $275,800 for "consulting services rendered for St. Augustine, Inc". Only the invoice submitted to CDGH was stamped "approved for payment".

The same day Alice Dill, an employee of Fortrend, wired $275,800 from St. Augustine's Golden Gate Bank account to petitioner's bank account with Smith Barney, Inc. The wire transfer did not indicate from what account the payment had been wired, and petitioner was unaware that the funds had been transferred from St. Augustine's account. Petitioner included the entire amount as income on its Form 1120, U.S. Corporation Income Tax Return, for 2000.

## Fortrend and the Taxi Transaction

Fortrend was formed on February 7, 1996, in the State of Delaware. Mr. Furman and Frederick Forster (Mr. Forster) were cochairmen of Fortrend and were responsible for overseeing its operations. Avanti, Inc. (Avanti), and Forbach, Inc. (Forbach), each owned a 50-percent interest in Fortrend. Mr. Furman and Mr. Forster were the sole shareholders of Avanti and Forbach, respectively, and they controlled Fortrend. Mr. Furman also owned a 70.79-percent controlling ownership interest in Signal Capital Associates, L.P. (SCALP), and was SCALP's general partner. Larry Austin was an agent of Fortrend.

On August 7, 2000, Fortrend entered into a stock purchase agreement with the trustee of the Frank Sawyer Trust of May 1992 to acquire the stock of Town and Checker.  On September 18, 2000, Fortrend assigned its rights to purchase the stock of Checker to another Furman-controlled entity, Baritone, Inc. (Baritone), by executing an assignment and assumption of stock purchase agreement, which Mr. Furman signed as Fortrend's authorized representative.[6]

On October 12, 2000, Baritone purchased all of the outstanding stock of Checker, changed Checker's name from Checker Taxi, Inc., to CDGH, Inc. (CDGH f.k.a. Checker), and merged into

---

[6] Baritone had been incorporated on July 13, 2000, just a few months before the Taxi Transaction took place.  Three Wood, L.L.C. (Three Wood), also was formed on or about July 13, 2000. According to the L.L.C. agreement for Three Wood, SCALP and Regency Resources each owned a 25-percent interest in Three Wood and Pylae Ltd. owned the remaining 50-percent interest in Three Wood.  Mr. Furman signed the L.L.C. agreement on behalf of SCALP and Regency Resources as general partner and director, respectively.

According to a Certificate of Action Taken by the Sole Director of Baritone, Inc. by Written Consent in Lieu of an Organizational Meeting, with Alice Dill acting as sole director, Baritone issued one share of common stock to Three Wood on Sept. 14, 2000.  The form also purports to indicate the election of Larry Austin as president and Alice Dill as vice president and secretary of Baritone.

A Certificate of Action Taken by the Sole Shareholder of CDGH by Written Consent in Lieu of a Meeting dated Oct. 11, 2000, and purporting to indicate the election of Alice Dill as CDGH's initial director was signed by Alice Dill as sole shareholder.

CDGH, with CDGH surviving the merger.  Austin signed CDGH's Federal income tax return for 2000.

St. Augustine

St. Augustine is a corporation formed under the laws of Delaware.  Its original shareholders were Ziyad Abduljawad, California Land Co., Ocean Land Co., Pacific Land Co., Sunset Land Co., and Western Land Co.  St. Augustine was formed for the purpose of holding an interest in St. Augustine II, L.L.C. (St. Augustine L.L.C.), and has never carried on any other business activity.  St. Augustine held an 81.67-percent interest in St. Augustine L.L.C.[7]

On September 5, 2000, St. Augustine L.L.C. fully redeemed St. Augustine's interest for $5,255,258.  St. Augustine's only asset following the redemption of its interest in St. Augustine L.L.C. was the $5,255,258 in cash it received from the redemption, which it retained rather than distributing it to its shareholders.

Apparently, Fortrend had its eye on acquiring St. Augustine. On October 12, 2000, i.e., the same day Baritone purchased the stock of Checker, Matthew G. Brown of the law firm of Gibson, Dunn & Crutcher L.L.P. faxed a copy of St. Augustine's unaudited financial statements for the period ending October 12, 2000, to

---

[7] The remaining interests in St. Augustine L.L.C. were held by PLC Homes, L.L.C. (10 percent), and Christopher Ventures, L.L.C. (8.33 percent).

Randolph Whitney Bae (Bae), an attorney for Fortrend. These financial statements confirmed that St. Augustine retained the $5,255,258 it had received from the redemption of its interest in St. Augustine L.L.C. Bae then faxed the financial statements to certified public accountant Howard Teig.

The next day Alice Dill, as sole director and vice president of CDGH, executed a Written Consent of the Sole Director of CDGH, Inc. dated October 13, 2000, and a stock purchase agreement between CDGH and the shareholders of St. Augustine, allowing CDGH to purchase all the shares of St. Augustine from the shareholders for $4,695,200.[8] CDGH used $4,683,965 generated from the Taxi Transaction and a $13,000 loan from Town to finance the purchase of the St. Augustine stock.[9] In October 2000 Alice Dill and Larry Austin had signature authority over the bank accounts held by Three Wood, CDGH, and St. Augustine. Alice Dill transferred $920,164.80 from CDGH's Golden Gate bank account to each of the shareholders of St. Augustine pursuant to the stock purchase agreement.

---

[8] Larry Austin signed a Certificate of Merger of St. Augustine II, Inc., and CDGH, Inc., dated Oct. 15, 2000, as president of both corporations. However, the certificate was not filed with either the Commonwealth of Massachusetts or the State of Delaware. And St. Augustine's 2000 Form 1120 signed by Larry Austin as president on Sept. 12, 2001, indicates that CDGH was its 100-percent owner. Thus, we presume no merger took place.

[9] The $4,683,965 in net cash generated by the Taxi Transaction for CDGH was wired from a Three Wood bank account to a CDGH bank account at Golden Gate Bank on Oct. 12, 2000.

Neither petitioner nor Ms. Caldarola has, at any time, entered into any contractual relationship with nor performed any services for St. Augustine.

The parties stipulated that as of the payment date Fortrend, through Mr. Furman, controlled SCALP, Three Wood, CDGH, and St. Augustine. But the parties disagree over who actually owned CDGH; they have stipulated that either SCALP or Three Wood was the sole shareholder of CDGH as of the date of payment to petitioner.[10]

Other Transfers From St. Augustine's Account

A letter from MidCoast to Mr. Furman dated April 27, 2000, sets forth the agreement between MidCoast and Fortrend regarding Fortrend's proposed acquisition of all of the issued and outstanding stock of Checker and Town. The letter also provides details on how MidCoast's fee would be calculated.

On October 12, 2000, MidCoast submitted two invoices--one to CDGH and one to St. Augustine for $3,267,505 for "services rendered" in connection with the acquisition of the outstanding

---

[10] On Oct. 12, 2000, SCALP contributed 5,500 shares of Trex Communications (basis $13,160,000, FMV $62,000) and 72 shares of Paclaco Equities, Inc. (basis $3,768,000, FMV $20,000), to CDGH in a sec. 351 exchange. CDGH did not issue any actual securities in the exchange because, according to the transferee statement required by sec. 1.351-3(b), Income Tax Regs., SCALP owned 100 percent of the stock in CDGH. SCALP also executed a Certificate of Action Taken by the Sole Shareholder of CDGH, Inc. by Written Consent in Lieu of a Meeting amending the corporation's bylaws, which was dated Oct. 13, 2000, and signed by Mr. Furman as general partner.

stock of Checker and Town.  On October 13, 2000, St. Augustine received a $3,300,000 loan from Town and immediately used the funds to pay the purported professional fees to MidCoast--even though the fee agreement was between MidCoast and Fortrend.  On October 16, 2000, St. Augustine repaid the loan to Town.

Manatt Phelps Phillips L.L.P. submitted an invoice to Fortrend, "Attn: Alice Dill", dated November 21, 2000, for $31,498.90 for "professional services in connection with stock purchase and asset sale transactions re St. Augustine II."  Alice Dill directed that the invoice be paid from St. Augustine's account.

Alice Dill also directed the following additional wire transfers from St. Augustine's Golden Gate bank account:  (1) $175,000 to Equipment Investment Corp. on October 16, 2000, for "Investment Banking Services Related to Equipment Leasing";[11] (2) $23,750 to Maxton Financial Ltd. on October 19, 2000, for "services rendered";[12] (3) $30,000 to Intercapital Associates for "consulting services rendered"; and (4) $97,500 to Steve Block for "consulting services rendered".  At least two of the invoices were faxed directly to Fortrend, and Equipment Leasing Corp.'s

---

[11] The text at the top of the fax says "From: ACCOUNTING DEPARTMENT * * * To: Frederick A. Forster."  As stated, supra, Forster was cochairman of Fortrend.

[12] The text at the top of the fax says "FORTREND INTL. LLC".

invoice was sent to Mr. Forster's attention.  None of the creditors performed services directly for St. Augustine. Petitioner had no involvement with St. Augustine's other payments.

St. Augustine's Tax Liability and Insolvency

On its Federal income tax return for 2000, which Austin signed, St. Augustine claimed legal fees and professional expenses as follows:

| Payee | Amount |
|-------|--------|
| MidCoast | $3,267,505 |
| Equipment Investment Corp. | 175,000 |
| CHC Industries | 275,800 |
| Maxton Financial | 23,750 |
| Intercapital Associates | 30,000 |
| Steve Block | 97,500 |
| Manatt Phelps | 31,498 |
| Total | 3,901,053 |

On July 13, 2005, respondent in a notice of deficiency disallowed the deductions and determined a $2,337,499 deficiency in St. Augustine's 2000 Federal income tax and a $467,499.80 penalty under section 6662(a).[13]  St. Augustine neither paid the deficiency nor filed a petition with the Court.  On November 14, 2005, respondent assessed the deficiency and the penalty.  At the time of the assessment, St. Augustine had no assets from which

---

[13]  In the notice of deficiency respondent explained his adjustments as follows:  "It is determined that St. Augustine II, Inc. has failed to substantiate that the reported legal and professional fees were ordinary and necessary business expenses, incurred and paid by the corporation."

the liability for the deficiency and related penalty could be satisfied. To date, this liability remains unpaid.[14]

The payments to petitioner, MidCoast, Equipment Investment Corp., Maxton Financial, Intercaptial Associates, Steve Block, and Manatt Phelps together with respondent's disallowance of the claimed deductions rendered St. Augustine insolvent.

## Discussion

### I. The Parties' Arguments

Respondent argues that petitioner is liable for $275,800 of St. Augustine's tax liability as a transferee of property of St. Augustine because petitioner received assets of St. Augustine in a transfer that is fraudulent under State law.

Petitioner argues that Fortrend should be treated as the transferor for Federal income tax purposes and that petitioner is not liable as a transferee because petitioner gave adequate consideration for the transfer.

In making the argument that Fortrend was the transferor, petitioner invokes the judicial doctrine of substance over form. Respondent argues that petitioner was complicit in a plan to avoid paying Federal income taxes and should be foreclosed from arguing that the transaction was anything but a transfer from St. Augustine to petitioner. Respondent also contends that

[14] Respondent has not attempted to collect St. Augustine's outstanding liability from Mr. Furman, Mr. Forster, SCALP, CDGH, or Fortrend as transferees of St. Augustine.

petitioner has failed to put forth the "strong proof" necessary to succeed on its substance over form argument.

II.   Transferee Liability in General

The notice of liability issued to petitioner was based on section 6901(a)(1)(A)(i), which provides:

> SEC. 6901(a).  Method of Collection.--The amounts of the following liabilities shall * * * be assessed, paid, and collected in the same manner and subject to the same provisions and limitations as in the case of the taxes with respect to which the liabilities were incurred:
>
> (1) Income, estate, and gift taxes.--
>
> (A) Transferees.--The liability, at law or in equity, of a transferee of property--
>
> (i) of a taxpayer in the case of a tax imposed by subtitle A (relating to income taxes) * * *

Section 6901(a)(1) does not create or define a substantive liability but merely provides the Commissioner a procedure to assess and collect from the transferee of property the transferor's existing tax liability.  See Commissioner v. Stern, 357 U.S. 39, 42 (1958) (discussing statutory predecessor of section 6901).  Section 6902 provides that the Commissioner has the burden of proving the taxpayer's liability as a transferee but not that of proving that the transferor was liable for the tax.

The substantive question of whether a transferee is liable for the transferor's obligation and the extent of his liability

depends on State law.  See Commissioner v. Stern, supra at 45;

Adams v. Commissioner, 70 T.C. 373, 389 (1978), affd.

without published opinion 688 F.2d 815 (2d Cir. 1982).  The

parties stipulated that California law applies.[15]

III. California Uniform Fraudulent Transfer Act (UFTA)[16]

Cal. Civ. Code sec. 3439.04(a) (West Supp. 2011) provides:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows:

(1) With actual intent to hinder, delay, or defraud any creditor of the debtor.

(2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor either:

(A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.

(B) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

---

[15] The parties in their briefs discuss the general requirements for establishing transferee liability as set forth in Gumm v. Commissioner, 93 T.C. 475, 480 (1989), affd. without published opinion 933 F.2d 1014 (9th Cir. 1991).  However, we need not look beyond California law to determine whether the transfer was fraudulent.  See Commissioner v. Stern, 357 U.S. 39 (1958); Upchurch v. Commissioner, T.C. Memo. 2010-169 n.6.

[16] The UFTA applies to transfers made on or after Jan. 1, 1987.  Cal. Civ. Code sec. 3439.12 (West 1997).

Cal. Civ. Code sec. 3439.05 (West 1997) provides:

> A transfer made or obligation incurred by a debtor
> is fraudulent as to a creditor whose claim arose before
> the transfer was made or the obligation was incurred if the
> debtor made the transfer or incurred the obligation
> without receiving a reasonably equivalent value in
> exchange for the transfer or obligation and the debtor was
> insolvent at that time or the debtor became insolvent as a
> result of the transfer or obligation.

Cal. Civ. Code sec. 3439.04(a)(1) relates to actual fraud,
whereas Cal. Civ. Code secs. 3439.04(a)(2) and 3439.05 relate to
constructive fraud.[17]

## IV. Analysis

Petitioner argues that Fortrend should be treated as the
transferor and that petitioner gave adequate consideration to
Fortrend in exchange for the $275,800 payment it received from
St. Augustine.  In doing so, petitioner asks us to apply
substance over form and recharacterize the payment as a series of
constructive transfers from St. Augustine to Fortrend.

The Tax Court and the U.S. Court of Appeals for the Second
Circuit, the court to which this case would be appealable,[18]
apply the "strong proof" rule when a taxpayer attempts to invoke
substance over form.  See Estate of Rogers v. Commissioner, 445

---

[17]  Respondent does not suggest that Cal. Civ. Code sec.
3439.04(a)(1) (West Supp. 2011) applies.

[18]  Under the Golsen rule, we follow the law of the Court of
Appeals to which the case is appealable.  See Golsen v.
Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir.
1971).

F.2d 1020, 1021-1022 (2d Cir. 1971), affg. T.C. Memo. 1970-192.
Under the strong proof rule, a taxpayer must present strong
proof, i.e., more than a preponderance of the evidence, for the
Court to disregard the form in which the taxpayer cast a
transaction.  See O'Malley v. Commissioner, T.C. Memo. 2007-79.

Petitioner has not presented the strong proof necessary to
prevail on its substance over form argument.[19]  Regardless, we do
not believe that the present circumstances warrant application of
substance over form.  Petitioner facilitated the Taxi Transaction
by introducing Fortrend to MidCoast.[20]  And although petitioner
"disclaims" any knowledge of or participation in the Taxi
Transaction, it is unlikely that petitioner could carry out its
duties as an independent consultant without being aware of the
type of transactions Fortrend intended to carry out.  St.
Augustine claimed a deduction to which it was not entitled for
the payment to petitioner.  Petitioner offered no explanation as
to why it submitted the second invoice for services provided to
St. Augustine when it in fact had not provided any services to
St. Augustine.  Without evidence to the contrary we find that the
payment to petitioner had no purpose other than for St. Augustine

---

[19]  The fact that this case was fully stipulated does not
relieve petitioner of this burden, just as it does not relieve
respondent of his burden of proving the elements of transferee
liability.

[20]  We note that both Fortrend and MidCoast have been the
subject of several tax shelter cases in this and other courts.

to attempt to claim a deduction. Accordingly, we decline petitioner's invitation to apply substance over form under these circumstances.

Respondent determined a deficiency against St. Augustine of $2,337,499 plus a penalty under section 6662(a) of $467,499.80. St. Augustine neither paid the tax nor filed a petition with the Tax Court. Respondent assessed the liability on November 14, 2005. Thus, St. Augustine owed a debt to the Internal Revenue Service. See Cal. Civ. Code sec. 3439.01(d) (West 1997).

The payment to petitioner along with the other transfers by St. Augustine rendered St. Augustine insolvent and unable to pay its debt to respondent. St. Augustine claimed deductions for each transfer, all of which were disallowed. St. Augustine reasonably should have believed that the deductions it claimed would be disallowed and it would be unable to pay its debt to respondent.[21]

St. Augustine transferred the $275,800 without receiving any consideration, let alone reasonably equivalent value, from petitioner. Petitioner never provided any services directly to St. Augustine. Although the parties stipulated that the $275,800 represented fair consideration for services provided to Fortrend,

---

[21] Petitioner does not dispute St. Augustine's tax liability or whether St. Augustine should have reasonably believed it would incur debts beyond its ability to pay as they became due.

we shall not attribute the receipt of this consideration to St. Augustine. See LR Dev. Co. LLC v. Commissioner, T.C. Memo. 2010-203. Accordingly, respondent has met his burden of proving that the transfer was fraudulent under Cal. Civ. Code secs. 3439.04(a)(2).[22]

V. Conclusion

Upon our examination of the entire record before us, we find that petitioner is liable as a transferee under section 6901. The transfer by St. Augustine (i.e., the debtor) to petitioner was fraudulent as to respondent (i.e., the creditor) under California law.

In reaching all of our holdings herein, we have considered all arguments made by the parties, and to the extent not mentioned above, we find them to be irrelevant or without merit.

To reflect the foregoing,

Decision will be entered

for respondent.

---

[22] In the light of this finding we need not provide an analysis under Cal. Civ. Code sec. 3439.05 (West 1997).