JAMES S. REILY AND HERMYE B. REILY, PETITIONERS *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4470–68. Filed October 6, 1969.

*Robert L. Roland*, for the petitioners.
*Bruce A. McArdle*, for the respondent.

MULRONEY, *Judge:* Respondent determined deficiencies in petitioners' income tax as follows:

| Year | Deficiency | Addition to tax, sec. 6653(a), I.R.C. 1954 [1] |
|---|---|---|
| 1962 | $1, 354. 52 | $67. 73 |
| 1963 | 967. 57 | 48. 38 |
| 1964 | 463. 07 | 23. 15 |

The issues are (1) whether an "Option to Lease" sold on February 23, 1962, had been held by petitioner James S. Reily for more than 6 months so as to entitle the petitioners to treat the proceeds as a long-term capital gain and (2) whether petitioners are liable for the addition to tax under section 6653(a) for the years in issue.

### FINDINGS OF FACT

All of the facts were stipulated and they are so found.

James S. Reily and his wife Hermye B. Reily were residents of Shreveport, La., at the time they filed their petition in this case. They filed joint income tax returns for 1962, 1963, and 1964 with the district director of internal revenue, New Orleans, La.

James S. Reily, who will be called petitioner, first secured the exclusive option to lease a tract of land in Baton Rouge, containing 6.263 acres, on April 23, 1959. The owner of the tract and optionor was Robert A. Hart II. The option agreement recites that petitioner paid $1,000 for the option, which could be applied on rent if the option was exercised, and that the option was to expire on midnight October 15, 1959. The option agreement sets forth the terms, conditions, and rental to be contained in a 30-year lease, in the event the option to

---

[1] All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.

lease was exercised by petitioner or some one he represented. The option could be exercised by sending a registered letter to optionor.

On August 25, 1959, the parties executed a five line addendum to the above option. This provides that, in consideration of petitioner paying Hart $500, the expiration date of the option is extended to midnight December 15, 1959.

On December 16, 1959, the parties executed a new option agreement almost identical with the prior option. It recites that petitioner paid $1,000 for the option and it recites that if the option is exercised "the sums paid as consideration for the options on this property shall be applied on the rental." This option was to expire on midnight March 31, 1960.

On May 12, 1960, the parties executed a new option agreement, much like the former option agreements. The rental to be paid under the 30-year lease in the event the option was exercised was a little lower. It states that petitioner paid $1,000 for the option and it recites that if exercised "the One Thousand Dollars ($1,000.00) paid as consideration for this option on this property shall be applied on the rental." This option was to expire on midnight July 31, 1960.

On July 29, 1960, the parties executed an addendum to this option similar to the one they executed with respect to the April 23, 1959, option. This recites that in consideration of petitioner paying Hart $2,000, the expiration date of this last option is extended to midnight January 31, 1961.

On February 1, 1961, the parties executed a new option agreement almost identical to the May 12, 1960, option agreement. It states that petitioner paid $1,250 for the option and it recites that if the option is exercised "the Four Thousand Two Hundred Fifty Dollars ($4,250.00) paid to date as consideration for this option on this property shall be applied on the rental." This option was to expire on midnight May 31, 1961.

On June 23, 1961, the parties executed a new option agreement, much like the February 1, 1961, option agreement. It states that the agreement was made on June 5, 1961, and that petitioner paid $1,500 for this option. It further recites that if the option is exercised "the One Thousand Five Hundred ($1,500.00) Dollars paid to date as consideration for this option on this property shall be applied on the rental." This option was to expire midnight September 5, 1961. If the option was exercised the term of the lease was to be as follows:

The Primary Term of the Lease will be Thirty Years (30) beginning thirty (30) days after the option has been exercised. Lessee shall have the option to renew the Lease for Six Consecutive Terms of Ten Years Each and for a Seventh and Final Term of Five Years on the same terms and conditions and for the same rental effective during the thirtieth year of the Primary Term of the Lease.

On September 5, 1961, Hart executed an option agreement wherein Robert L. Roland is given the exclusive right "to lease in his own name or in the name of any person, partnership or corporation, whom he may represent," the tract that was the subject of the prior option agreements. The agreement states Hart has received $3,000 for this option and it recites that in the event the option is exercised "the $3,000.00 cash paid as consideration hereof, together with the $1,500.00 heretofore paid by Optionee to Owner as consideration for a prior option, shall be considered as part payment of said $27,000.00 [rental installment]." The exercise of the option was to be accomplished by the execution of a proposed lease said to be attached to the option agreement. The proposed lease is not attached to the option agreement that is in evidence. This option agreement is signed by James S. Reily as a witness. The option was to expire on midnight March 15, 1962.

Also on September 5, 1961, Robert L. Roland executed what is called a "Counter Letter By: Robert L. Roland To: James S. Reily" which is a document in affidavit form with respect to the foregoing option agreement wherein it is stated, in part:

That in truth and in fact appearer [Robert L. Roland] has no interest in said property; that the option to lease the same by him was for the account of James S. Reily and with sums furnished to appearer by Wilson Abraham, and that he will execute in favor of the said James S. Reily, or his nominee, at such time as appearer is called upon so to do, an instrument transferring to the said James S. Reily all right, title and interest that appearer has or may have in and to the said property.

That considering the aforementioned acknowledgment of the consideration in the sum of $4,500.00, which was furnished to appearer by the said Wilson Abraham, the said Wilson Abraham will be entitled to appropriate credits for the payment of the said consideration at the time final arrangements are made herewith.

On February 23, 1962, Robert L. Roland and James S. Reily, as vendors, executed a document selling the September 5, 1961, option to the Lakeshore Development Corp. for the total consideration of $685,000, with $5,000 paid on the date of sale and the balance represented by a note for $15,000 payable July 9, 1963, and a second note in the amount of $665,000 payable in 95 annual installments of $7,000 each beginning March 15, 1963. The sale agreement contained the following statement:

VENDOR further declared that though the option to lease was taken in his name, in truth and fact the option was acquired by him as agent, and not as principal, for James S. Reily and was an extension of options dating back to April 23, 1959, and the option money was advanced by James S. Reily and that this sale and conveyance is made at the request of James S. Reily, * * *

On February 23, 1962, Robert L. Roland and James S. Reily signed and sent a letter to Hart which stated, in part:

This will advise you that by notarial act dated February 23, 1962, a copy of which has been furnished to Mr. Stewart, we have transferred all of our right, title and interest in the option given us by act before Ashton L. Stewart, Notary Public, dated September 5, 1961, to Lakeshore Development Corporation.

We have read the proposed lease between you and Lakeshore Development Corporation, [we] agree that it fulfills the option requirements, and release you from any obligation to us, upon your signing such lease.

The option contracts dated April 23, 1959, and December 16, 1959, provided for leases calling for rental payments of $25,000 per year for the first 10 years of the term of lease, $28,000 for the second 10 years of the term of lease, and $30,000 for the remaining years of the lease and for any periods covered by options of renewal.

The option contracts dated May 12, 1960, February 1, 1961, and June 5, 1961, provided for leases calling for rental payments of $18,000 for the first 10 years of the term of lease, $22,000 for the second 10 years of the term of lease, and $25,000 for the remaining years of the lease and for any periods covered by options of renewal.

In his 1962, 1963, and 1964 income tax returns petitioner treated the gains he reports he realized from the payments made during said years pursuant to the contract of sale of the option as long-term capital gains. In his computations he uses as cost of the option the sum of all the amounts paid to Hart for options beginning in April 1959, or the sum of $10,250. Also in his computation he uses expenses of sale consisting of legal fees, $2,500, and realtors' commission, $1,000, or a total of $3,500.

Respondent determined the gains petitioner realized from the sale of the option were taxable "as a short-term capital gain rather than a long-term capital gain" as reported. In his computation he used as cost of the option the sum of $3,000, the amount paid for the September 5, 1961, option. Also in his computation he used the same amounts as expenses of sale ($3,500 legal fees and realtors' commission) as petitioner had used. By deducting these sums, or $6,500, from the contract purchase price of $685,000, respondent determined the profit to be realized from the sale of the option was $678,500 which was 99.05 percent of the total purchase price of $685,000. Accordingly, respondent determined petitioner's short-term capital gains from the sale of the option for the years in question as follows:

|  | 1962 | 1963 | 1964 |
|---|---|---|---|
| Collections or cash received during year | $5,000.00 | $7,000.00 | $22,000.00 |
| Percentage of profit | 99.05 | 99.05 | 99.05 |
| Taxable gain realized | 4,952.50 | 6,933.50 | 21,791.00 |
| Taxable gain reported on return | 2,009.00 | 2,812.60 | 8,036.00 |
| Increase in taxable income | 2,943.50 | 4,120.90 | 13,755.00 |

12

The basic issue is whether petitioner held an option to lease for more than 6 months so that the proceeds from its sale are taxable as long-term capital gain under sections 1221–1223. The September 5, 1961, option was sold February 23, 1962, or 5 months and 18 days after petitioner obtained it.

Petitioner argues that the option dated September 5, 1961, and sold on February 23, 1962, was essentially a continuation of the prior options "and as a practical matter may be considered the same thing." He contends that every important element of the option sold was the same in respect to the other options. On brief he confines his discussion to the options dated June 5, 1961, and September 5, 1961, since, as he states, if the latter is in fact an extension of the former then he held the option more than 6 months before selling.

We do not know the exact terms of the lease that was the subject of the September 5, 1961, option agreement. This option is not like the prior options that merely described the lease that was to be executed if the opiton was exercised. This one did not describe the lease but said the proposed lease was attached and the option could be exercised by execution of this proposed lease. No copy of this proposed lease is attached to the copy of the September 5, 1961, option agreement in evidence. Petitioner states on brief that the primary and renewal terms of the said proposed lease and the rental provisions were the same as set forth in the description of the proposed lease that was the subject of the June 5, 1961, option agreement.

Respondent argues that each option has its own identity, is a separate and distinct asset from every other option, expires for all purposes on its expiration date, and, therefore, the holding period of the option sold does not relate back to the prior options. He contends that what petitioner sold on February 23, 1962, was not only an option to lease but an option to lease within a certain fixed period of time which began on September 5, 1961, and not before. We agree with respondent.

An option is a contract which gives the optionee a right to buy, sell, lease, or the like within a certain period of time. This time factor or limitation in an option is of the essence. It goes to the very nature of an option. 6 Williston, Contracts, sec. 853, p. 211 (3d ed. 1962). Here, each option executed and held by the petitioner specifically acknowledged this fact and provided that "time is of the essence" in regard to petitioner's rights and that all these rights terminated if not exercised prior to the expiration date.

No reason is given why the September 5 option was made out to Roland as optionee when apparently Reily was present as he signs as a witness. However, even if it be admitted Roland was acting for

Reily in securing and selling this option the only thing transferred was the September 5, 1961, option. And even if it be admitted that the primary and renewal terms and rental provisions in the lease that was the subject of the September 5 option were the same as the lease that was the subject of the June 5, 1961, option the fact remains that the option sold was a new and different option. It was granted for a different period, for a new consideration, and the manner in which it was to be exercised was entirely different. The document entitled "Sale of Option" recites that Roland was, on September 5, 1961, "granted an option to lease" the tract in question and that he "does hereby sell, convey, assign, transfer, set over and deliver unto: Lakeshore Development Corporation * * * his entire right, title and interest in and to said option." The said instrument states that a copy of the September 5, 1961, option is attached thereto. Petitioner conveyed nothing to the purchaser with respect to the June 5, 1961, option for that had long since expired by its terms. The September 5, 1961, option expired on March 15, 1962, and it is only this option and only this right, that was sold by petitioner to the Lakeshore Development Corp. The right granted was a right to lease, if the optionee chose to do so, within a period of time which began on September 5 and expired on March 15, 1962.

It is somewhat significant that this September 5 option was for a period of 6 months and 10 days. Petitioner held the option for 5 months and 18 days before selling it. The statute states that a short-term capital gain "means gain from the sale or exchange of a capital asset held for not more than 6 months." Sec. 1222. The burden was on petitioner to show that he held the property he sold for more than 6 months. See *Fogel* v. *Commissioner*, 203 F. 2d 347 (C.A. 5, 1953), affirming a Memorandum Opinion of this Court; *Emmette L. Barran*, 39 T.C. 515 (1962), reversed in part on other grounds 334 F. 2d 58 (C.A. 5, 1964), and *Joseph P. Pike*, 44 T.C. 787 (1965). The conclusion that petitioner's gain from the sale of the option was a short-term gain under the above statute is inescapable.

Petitioner has cited no authority nor can we find any which would sustain his contention that the option sold is in fact a continuation of a prior option which expired at the time the option sold came into existence. No provision exists in the Internal Revenue Code of 1954 authorizing, in a situation such as this, the tacking on of holding periods of separate contracts. We sustain the position taken by respondent on this issue.

Respondent determined an addition to tax under section 6653(a) for 1962, 1963, and 1964. This section provides that "if any part of any underpayment * * * is due to negligence or intentional disregard of rules and regulations * * *, there shall be added to the tax an

amount equal to 5 percent of the underpayment." Petitioner had the burden to show that no part of any underpayment was due to negligence or intentional disregard of respondent's rules and regulations. *Byron H. Farwell*, 35 T.C. 454 (1960), *Leroy Jewelry Co.*, 36 T.C. 443 (1961).

There were several other adjustments by respondent which petitioner has not questioned.

In respect to 1962 and 1963, petitioner has already been assessed a portion of the other deficiencies including the addition for the underpayment of taxes under section 6653(a) and he has consented to this assessment. As for 1964, he has only stated on brief that that portion of the deficiency based on the issue relating to the option was a bona fide dispute. There were other adjustments made in 1964 by respondent. Nothing has been said in respect to the other adjustments which have not been contested that were made in 1964 and also gave rise to a portion of the deficiency for that year. Petitioner offered no proof on the addition to tax for negligence issue on which he had the burden. The stipulation on which this case was submitted is silent with respect to this issue. Respondent's determination that at least some part of the underpayment for each of the years in question was due to negligence or intentional disregard of rules and regulations is presumptively correct. Since there is no evidence to the contrary, petitioner is liable for the additions to tax as determined by respondent. *James W. England, Jr.*, 34 T.C. 617 (1960).

We hold that the option to lease sold on February 23, 1961, was not held by petitioner for more than 6 months and the proceeds from its sale are taxable as short-term capital gain and that petitioners are liable for the addition to tax under section 6653(a) for each of the years in issue.

*Decision will be entered for the respondent.*