OLIVER G. HARRIS and WILMA L. HARRIS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Harris v. Commissioner
Docket No. 7878-78.
United States Tax Court
T.C. Memo 1981-46; 1981 Tax Ct. Memo LEXIS 699; 41 T.C.M. (CCH) 815; T.C.M. (RIA) 81046; February 4, 1981. Paul T. Wright, for the petitioners. Deborah A. Butler, for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Judge: For the taxable years 1974 and 1975, respondent determined deficiencies in petitioners' income tax in the respective amounts of $ 1,503.51 and $ 2,973.84, and additions to tax under section 6653(a) [1] in the respective amounts of $ 75.18 and $ 148.69. The issues for decision are: (1) whether petitioners' conveyances of their lifetime services to a trust constitute assignments of income which fail to relieve them of their income tax liability; (2) whether, in the alternative, the income at issue is taxable to the petitioners under the provisions of sections 671 through 677; (3) whether petitioners are entitled to deduct under section 212 $ 3,500 paid in 1974 for materials used in creating a Trust; (4) whether petitioners are entitled to depreciation deductions for two automobiles; (5) whether petitioners are entitled to deduct a loss from the *702 sale of a "pickup" truck in 1974; and (6) whether petitioners are liable for the additions to tax under section 6653(a) for the years 1974 and 1975. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. At the time the petition in this case was filed, petitioners resided in Irving, Texas. On October 1, 1974, a document entitled "Declaration of Trust of This Pure Trust" was signed by Oliver G. Harris ("petitioner"), Wilma L. Harris and Guy C. Harris. Petitioner signed as Grantor-Creator, and Wilma L. Harris and Guy C. Harris signed as trustees. By this declaration, petitioner and his wife sought to create the "Oliver G. Harris, Jr. Family Estate (A Trust)" (the "Trust"). The Declaration of Trust provided, in part, as follows: Expenditures The Trustees shall fix and pay compensation of all officers, employees or agents in their discretion, and may pay themselves such reasonable *703 compensation for their services as may be determined by a MAJORITY of the Board of Trustees. Trustees' Declaration of Purpose of this Express Equity Pure Trust. The DECLARED PURPOSE OF THE TRUSTEES OF THIS TRUST shall be to accept rights, title and interest in real and personal properties conveyed by THE CREATOR HEREOF AND GRANTOR HERETO. Included therein is the exclusive use of his lifetime services and ALL OF HIS EARNED RENUMERATION ACCRUING THERE-FROM, * * * Duration - Closure This Trust shall continue for a period of twenty-five years from date, unless The Trustees shall unanimously determine upon an earlier date. The Trustees may at their discretion, because of threatened depreciation in values, or other good and sufficient reason necessary to protect or conserve trust assets, liquidate the assets, distribute and close The Trust at any earlier date determined by them. * * * On October 1, 1974, petitioner executed documents by which he purportedly sold and conveyed to the Trust certain real property located in Potter County, Fannin County and Lamar County, Texas. Pursuant to the first meeting of the Board of Trustees of the Trust, petitioner received 100 units *704 of beneficial interest (which constituted all of the units of beneficial ownership of the Trust) and was appointed a trustee for life; also at that time, Wilma L. Harris was appointed a trustee for life. Pursuant to the second meeting of the Trust's Board of Trustees, the 100 units of beneficial interest that had been issued to petitioner were reissued as follows: 50 units to Wilma L. Harris and 50 units to Oliver G. Harris, Jr. Guy C. Harris had no direct beneficial interest in the Trust. At that second meeting, the Board also determined that the Trust was to provide the residence and other incidents of living accomodations for the trustees. As a consequence, the Trust paid for the maintenance of petitioners' personal residence. In addition to providing the petitioners a home and living accomodations, the Trust also provided the following: 1. * * * 2. ALL transportation expense incident to ALL Trust business. 3. ALL traveling expense incident to ALL Trust business. 4. ALL selling expense incident to ALL Trust business. 5. ALL office expense incident to ALL Trust business. 6. * * * 7. ALL entertainment and/or convention and meeting expenses incident *705 to ALL Trust business. 8. Adequate life insurance and insurance to cover cost of medical care for the above named. 9. A reasonable, monthly, consultant's fee to the above named persons which is income to the recipient. The Trust paid expenses incurred by the petitioners in the use of their personal automobiles. The amount of "consultant fees" paid by the Trust to the petitioners was determined by the petitioners. The administration of the Trust with respect to the distributions of annual income is not limited or defined in any manner. The trustees are accountable to no one -- "The trustees are NOT personally liable when dealing with the Trust properties or matters." The grantors-petitioners are also authorized to transfer the units of beneficial interest. Moreover, the trustees, by unanimous vote, can determine the Trust. During the taxable years at issue all decisions concerning the Trust were made by the petitioners. Both before and after the formation of the Trust, petitioner was employed by Braniff Airways, Inc. ("Braniff") pursuant to a union contract. No written agreement existed between the Trust and Braniff regarding the performance of services by petitioner. *706 Petitioner's remuneration, employment duties and work schedule were determined in the same manner after the creation of the Trust as before its creation. Both before and after the formation of the Trust, Wilma L. Harris was employed pursuant to a union contract with Atchison Topeka and Santa Fe Railway Company ("Atchison"). No written agreement existed between the Trust and Atchison regarding the performance of services by Wilma L. Harris. Wilma L. Harris' remuneration, employment duties and work schedule were determined in the same manner after the creation of the Trust as before its creation. Petitioners purchased the trust documents from Educational Scientific Publishers for $ 3,500. Petitioners, by the establishment of the Trust, sought a legal way to protect their assets from probate. Petitioners did not discuss the legality of the Trust with either an attorney or an accountant prior to the establishment of the Trust. They did, however, rely on the representations of a salesman from Educational Scientific Publishers, Frank Carnefix. Carnefit sold petitioners the trust documents which were known as "educational material." Bill Ball, an "educator" with Educational Scientific *707 Publishers, demonstrated to petitioners what was required to fill out the various documents. Petitioners were informed that an attorneys and an accountant helped prepare these educational materials and that the materials' purchase price included the cost of attorney's fees in the event the legality of the Trust was ever questioned. During the taxable year 1974, petitioner received income in the amount of $ 20,397.21 from Braniff and petitioner, Wilma L. Harris, received income in the amount of $ 12,033.01 from Atchison. For the taxable year 1975, petitioner received income in the amount of $ 17,347.23 from Braniff and petitioner, Wilma L. Harris, received income in the amount of $ 13,272.72 from Atchison. These monies were paid over to the Trust pursuant to the "contract" petitioners had with it. Petitioners in turn received "consulting fees" from the Trust. Forms 1041, United States Fiduciary Income Tax Return, for the years 1974 and 1975 were filed for the "Oliver G. Harris, Jr. Family Estate (A Trust)." Petitioners used a 1973 GMC pickup truck in connection with their farm activities. In 1975 the truck was sold and petitioners realized a loss in the amount of $ 1,050. *708 On their 1974 tax return petitioners claimed depreciation deductions for a car, a Dodge pickup, and the GMC pickup in the respective amounts of $ 3,500, $ 6,500 and $ 1,200. OPINION This Court has consistently held that attempts to shift the incidence of taxation by means of a "family trust" are ineffective for Federal tax purposes. Vercio v. Commissioner,73 T.C. 1246 (1980); Markosian v. Commissioner,73 T.C. 1235 (1980); Wesenburg v. Commissioner,69 T.C. 1005 (1978). Generally, such attempts violate the assignment of income doctrine's fundamental tenet that income is taxable to the one who earns it. United States v. Basye,410 U.S. 441 (1973); Lucas v. Earl,281 U.S. 111 (1930). Here petitioners were the ones who actually earned the income; the trust was not an active entity which independently earned income apart from petitioners' assignments. As a consequence, petitioners are taxable on the salaries and wages earned during 1975 notwithstanding their trust arrangement. In view of this holding we need not consider respondent's alternative argument that the income reported by the Trust, *709 which was attributable to the purported conveyances of petitioners' lifetime services, is taxable to petitioners under the provisions of sections 671 through 677. The next issue for decision is whether the $ 3,500 petitioners paid in 1974 to establish the family trust is properly deductible under section 212. We hold that it is not. In the instant case, the $ 3,500 fee for materials was paid to change the manner in which petitioners' property was held. It was not intended to facilitate the creation of a new source of taxable income or the collection of earned but unrealized income. See section 1.212-1(a)(1), Income Tax Regs. Thus, the fee cannot be allowed under section 212(1). Similarly, no deduction is allowable under section 212(2) since none of the property was transferred to the Trust for purposes of producing income taxable to petitioners. That section only authorizes deductions for expenses incurred for the management, conservation or maintenance of income producing property. See Bagley v. Commissioner,8 T.C. 130, 135 (1947). We also reject the argument that section 212(3) authorizes a deduction for the instant expenses. There is no evidence that *710 any portion of the $ 3,500 in question was paid for tax advice. Indeed, petitioners testified that neither an accountant nor a lawyer were consulted prior to the establishment of the Trust. Compare Merians v. Commissioner,60 T.C. 187 (1973). The next issue for decision is whether petitioners are entitled to depreciation deductions for a Dodge pickup truck and an automobile for the year 1975. Petitioners presented no evidence as to this issue and accordingly, respondent must prevail. Welch v. Helvering,290 U.S. 111 (1933); Rule 142)(a), Tax Court Rules of Practice and Procedure.
Next, we consider whether petitioners are entitled to a deduction for a $ 1,050 loss on the sale of a GMC pickup trust in 1975. While the record is not entirely clear on the point, it appears that respondent does not dispute that the petitioners actually sustained the loss in 1975 in the amount claimed, and we have accordingly so found. The dispute therefore turns upon whether the loss was a business loss, as petitioners claim, or a personal loss, as respondent claims. Petitioner convincingly testified that the truck was used on one of his farms in connection *711 with farming activities. Since the truck was used in petitioner's farming enterprise, which comprised a trade or business within the meaning of section 165(c) (respondent has not argued otherwise), we hold that petitioners are entitled to deduct the $ 1,050 loss which they claimed on their return. The final issue for decision is whether petitioners are liable for the addition to tax under section 6653(a). That section imposed a penalty if any part of the underpayment is due to negligence or intentional disregard of rules and regulations. Petitioners bear the burden of proving that the respondent's determination regarding this issue was erroneous. Reily v. Commissioner,53 T.C. 8 (1969). Both petitioners testified that they relied upon the representations made by salesmen from Educational Scientific Publishers. Although we are satisfied that petitioners were enticed, in part at least, by Carnefix' and Ball's sales promotions, we cannot say that the adoption of the instant family trust scheme is something a reasonable man would have engaged in. No advice from an accountant or lawyer was sought. In our view, a prudent individual would have endeavored to obtain *712 independent legal and tax advice before attempting to make such an all-encompassing (though ineffective) disposition of all of his or her assets, including, as here, the very means of livelihood. To anyone (and we would include petitioners) not incorrigibly addicted to the "free lunch" philosophy of life, the entire scheme had to have been seen as a wholly transparent sham. Accordingly, we hold that petitioners are liable for the addition to tax under section 6653(a). Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, unless otherwise specifically indicated.↩