WILLIAM L. BALIS AND MARGARET B. BALIS, Petitioners, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Balis v. Commissioner
Docket Nos. 27250-87, 8080-88, 32376-88
United States Tax Court
T.C. Memo 1992-34; 1992 Tax Ct. Memo LEXIS 28; 63 T.C.M. (CCH) 1830; T.C.M. (RIA) 92034; January 14, 1992, Filed *28 Decision will be entered under Rule 155. Keith H. Gill, for petitioners. Paul K. Voelker, for respondent. COUVILLION, Special Trial Judge. COUVILLION
MEMORANDUM OPINION These consolidated cases were heard pursuant to section 7443A(b)(3) [1] and Rules 180, 181, and 182. Respondent determined deficiencies in petitioners' Federal income taxes and additions to tax as follows: Additions to Tax
Docket No.
Year
Deficiency
Sec. 6653(a)(1) [1]
27250-87
1982
$   900.00
$ 45.00
1983
$ 1,582.00
$ 79.10
8080-88
1984
$ 2,514.08
-- 32376-88
1985
$ 2,037.86
-- *29 The issues for decision are: (1) Whether deductions for amounts paid to a trust known as the Balis Family Preservation Trust are allowable; (2) whether petitioners are entitled to deduct an amount paid for tax return preparation as a Schedule C business expense in 1984; and (3) petitioners' liability for the additions to tax. Some of the facts were stipulated and are so found. Petitioners resided at Port Allen, Louisiana, when they filed their petitions. The central issue in this case involves the creation of a trust by petitioners, to which petitioners conveyed their home, business, and other properties and, as to which, petitioners contend that certain payments by them to the trust are deductible as ordinary and necessary business expenses, and that certain income from the transferred properties is attributable to the trust. In 1981 or 1982, William L. Balis (petitioner) purchased, for $ 195, a publication written by one Martin Larsen entitled "A Manual on How to Establish a Trust and Reduce Taxation" (the Larsen trust manual) from an organization known as Liberty Lobby. The Larsen trust manual was purchased as the result of an advertisement which appeared in the Spotlight, *30 a newspaper which petitioner characterized as a "populace publication". [2]
Petitioner also attended seminars sponsored by Liberty Lobby and met Courtney Smith, an individual whom petitioner stated "was working for Liberty Lobby out of Washington, D.C." Mr. Smith's sales of the Larsen trust manual and promotion of an abusive tax shelter known as The Family Preservation Trust are described in United States v. Smith, 657 F. Supp. 646 (W.D. La. 1986), affd. per curiam 814 F.2d 1086 (5th Cir. 1987). The United States District Court *31 found that Mr. Smith's sale of the Larsen trust manual was subject to the section 6700 penalty for promotion of an abusive tax shelter and enjoined sale of the family preservation trust plan pursuant to section 7408. United States v. Smith, supra at 659. Petitioners created their trust on July 22, 1982, by preparing and executing a document entitled "Declaration of Trust." The document followed the form suggested in the Larsen trust manual. Petitioners did not seek the services of an attorney nor any professional advice as to whether the document constituted a valid trust under Louisiana law. The trust declaration designated the trust as the Balis Family Preservation Trust with petitioner as trustor and Mrs. Balis and a family friend, Pearlene C. Laprairie, as trustees. The trust declaration does not identify any beneficiaries of the trust. Petitioner testified that, during the years at issue, the beneficiaries were Mrs. Balis (50 percent) and petitioners' two sons (25 percent each). Petitioner testified that Mrs. Balis' beneficiary interest was reallocated to petitioners' sons after the Smith case was decided by the District Court in 1986. As recommended *32 in the Larsen trust manual, prior to conveying any property to the trust, Mrs. Balis first conveyed to petitioner on July 22, 1982, all of her interests in the community property she owned with her husband. This consisted of their family home, a coin-operated laundromat, a car wash, a pecan orchard, a pasture, and all real estate upon which these property interests were situated. In addition, Mrs. Balis conveyed or disclaimed her interest in a Gemini Laboratory Analyzer, which was then leased to a medical clinic at Cottonwood, Alabama; her interest in 372 shares of corporate stock, Capital Bankshares, Inc.; and her interest in a Certificate of Limited Partnership in Century Properties Fund XIV. All of these instruments, including the Declaration of Trust, were recorded in the public records of West Baton Rouge Parish, Louisiana, the parish in which the properties were located. Petitioner then executed similar instruments in which he conveyed the same properties to the trust. These documents were recorded several days later. Each of the documents recited that the transfer to the trust was for "certain adequate and valuable considerations." On August 2, 1982, the trust then leased *33 to petitioners some of the properties which had been transferred to the trust. Petitioners' residence was leased to them for $ 300 per month, the laundromat and car wash were leased for $ 900 per month, and the pecan orchard was leased for $ 250 per month. [3] The trust and petitioner entered into an agreement dated September 16, 1982, which required petitioner to provide to the trust "Yard work, spraying, minor carpentry, pipe fitting, and other miscellaneous work" in exchange for "Fee will be paid when bill is itemized and presented at end of month subject to approval of Trustees." The trust also entered into an agreement with Mrs. Balis for her to provide the following services: "Keeping of Trust Records; receiving all funds into the trust; paying all bills and fees; taking care of all correspondence; preparing all leases and contracts; preparing or having prepared both State and Federal income tax returns; preparing K-1 forms and 1099 Misc. forms" in exchange for "A fee not to exceed $ 150 per month." *34 The trust filed Forms 1041, U.S. Fiduciary Income Tax Returns, for fiscal years ended July 31, 1983, through and including July 31, 1986. Respondent examined the trust's income tax returns for the taxable years ended December 31, 1983, December 31, 1984, and December 31, 1985, and determined no change to the tax reported. On their Federal income tax returns for years 1982 through 1985, the years at issue, petitioners deducted amounts paid as rent to the trust for use of the business property. On the fiduciary income tax returns filed by the trust, depreciation was claimed with respect to the business property and petitioners' residence. Respondent determined that the transactions between petitioners and the trust lacked economic significance, were shams entered into primarily for tax avoidance, and should be disregarded. Respondent disallowed deductions claimed by petitioners for payments to the trust for rent and other expenses and allowed petitioners depreciation taken by the trust with respect to business property. Respondent also determined that rental income paid to the trust by third parties was attributable to petitioners. Respondent did not make any adjustment with *35 respect to income reflected on petitioners' returns as received by Mrs. Balis from the trust but, at trial, agreed that, if the Court holds that the trust is a sham, petitioners' income should be adjusted to delete such amounts. The "grantor-trust" provisions of sections 671 through 677, inclusive, govern whether the grantor is treated as owner of the property and whether the trust will be recognized for tax purposes. A trust will be ignored for tax purposes and the grantor treated as the taxpayer with respect to trust transactions when the grantor retains substantially unfettered powers of disposition. See United States v. Buttorff, 761 F.2d 1056, 1061 (5th Cir. 1985); Schulz v. Commissioner, 686 F.2d 490, 495 (7th Cir. 1982), affg. T.C. Memo. 1980-568; Vnuk v. Commissioner, 621 F.2d 1318 (8th Cir. 1980), affg. T.C. Memo. 1979-164. Retention of beneficial enjoyment of trust property and the power to control and liquidate the trust either unilaterally or with concurrence of someone who is not an "adverse party" invalidates the trust for Federal tax purposes. For these purposes, an adverse *36 party is "any person having a substantial beneficial interest in the trust which would be adversely affected by the exercise or nonexercise of the power which he possesses respecting the trust." Sec. 672(a). Petitioners argue that Mrs. Balis was an "adverse party" for purposes of the grantor trust provisions because she had control over the trust and was also a beneficiary but was not the grantor. The transfer of Mrs. Balis' interest in jointly owned property to petitioner, followed immediately by the transfer of such property to the trust created shortly before those transactions, is sufficient to establish Mrs. Balis' status as a grantor in substance, if not in form. In United States v. Smith, supra at 653, the District Court found, with respect to similar transactions: Looking to the substance and purpose of the transactions recommended by Smith and the Larsen Manual, this court finds that the interspousal transfer creates nothing more than the facade of a meaningful transaction. Though facially attractive, the paper conveyance cannot create the required adversity nor can it shield such a trust from the express provisions of the Code. The transferring *37 spouse, upon subsequently becoming a trustee, becomes a grantor-trustee. * * *
It is well settled that respondent and the courts may look beyond the form of a transaction to determine its substance. Although a taxpayer may structure a transaction so that it satisfies the formal requirements of the Internal Revenue Code, the legal effect of a transaction may be denied if its sole purpose is to evade taxation. Zmuda v. Commissioner, 731 F.2d 1417 (9th Cir. 1984), affg. 79 T.C. 714 (1982). The courts have consistently held that, where the only effect of a transaction is to create income tax deductions, it is a mere sham. Neely v. United States, 775 F.2d 1092 (9th Cir. 1985). This rule applies even if the entity has a separate existence recognized under State law. Zmuda v. Commissioner, 79 T.C. 714, 720 (1982). In Schulz v. Commissioner, supra at 496, the United States Court of Appeals for the Seventh Circuit, citing the timing and purpose of the transaction, found that a transfer by a wife of her real and personal property to her husband followed by a transfer of the family's *38 property to a trust by the husband lacked economic substance and should be ignored on the grounds that substance predominates over form or, in the alternative, because the parties did not treat the transfer as a sale or a gift. See also United States v. Buttorff, supra.
Petitioners gave as their motive for creating the trust a desire to avoid lengthy probate proceedings in the passing of their property to their sons. Petitioners, however, have not shown that the transactions at issue had any present economic effect other than income tax savings. Operation of the businesses and occupation and maintenance of the family home continued in the same fashion after the transfer of the properties into the trust as before the transfers. The Court concludes that the transfer of legal title to the properties was done merely to support petitioners' claims of deductions for depreciation on petitioners' residence and rent for petitioner's use of the business property that would not have been otherwise available. The transactions lacked economic substance and are, therefore, not valid for tax purposes. Additionally, petitioners did not treat the transfers as sales or *39 gifts. The consideration for each transfer is specified in the deeds as "certain valuable considerations", but there is no evidence that petitioner paid anything to Mrs. Balis for her interests; further, it appears that no gift tax returns were filed by Mrs. Balis with respect to the transfers. See Schulz v. Commissioner, supra at 496 n. 21. Nor was any evidence presented by petitioners to show that the trust was initially funded by, or that this trust paid any consideration to, petitioner for the property transfers. The Court concludes that the transactions between petitioners and the trust were sham transactions, lacking in economic substance,and are not recognized for tax purposes. Accordingly, respondent's determination is sustained. The next issue is whether petitioners are entitled to deduct $ 500 in 1984 for preparation of their individual income tax return. Petitioners claimed the deduction as a Schedule C business expense. Respondent concedes the amount is allowable as a Schedule A itemized deduction; however, petitioners did not itemize their deductions for 1984. To establish their entitlement to a business expense deduction under Schedule *40 C, petitioners must show that the fee was incurred as an ordinary and necessary expense paid or incurred during the taxable year in carrying on their trade or business. Sec. 162(a). Petitioners, who bear the burden of proof, have not shown what, if any, portion of the return preparation fee was attributable to their business. Accordingly, respondent's determination is sustained. The remaining issue is petitioners' liability for the additions to tax for negligence for the 1982 and 1983 tax years. Section 6653(a)(1) provides that, if any underpayment of tax is due to negligence or intentional disregard of rules or regulations, there shall be added to the tax an amount equal to 5 percent of the underpayment. Section 6653(a)(2) provides that there shall be added to the tax, in addition to the amount described in section 6653(a)(1), an amount equal to 50 percent of the interest payable under section 6601 with respect to that portion of the underpayment attributable to negligence or intentional disregard of rules or regulations. Negligence is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). *41 The Commissioner's determination is presumptively correct and will be upheld unless the taxpayers are able to rebut the presumption by showing they used due care. See Reily v. Commissioner, 53 T.C. 8 (1969). Petitioners have not shown that they used due care in filing their returns. The trust transactions were a sham and petitioners knew that. Therefore, respondent's determination with respect to the addition to tax under section 6653(a)(1) is sustained. Section 6653(a)(2) applies to that portion of the underpayment which is attributable to negligence or intentional disregard of rules or regulations. Petitioners claimed a business deduction of $ 500 on their 1984 return for preparation of their individual income tax return. That deduction was disallowed. Even though petitioners failed to establish that this item was a trade or business expense, the Court notes that, on their 1982, 1983, and 1985 returns, petitioners also claimed this item as a trade or business expense deduction,which respondent did not disallow. The Court holds, therefore, that the underpayment in tax for 1984 attributable to the disallowed $ 500 item is not an underpayment attributable *42 to negligence or intentional disregard of rules or regulations. Consequently, petitioners are absolved of the addition to tax under section 6653(a)(2) as to this item. To take into account the concession of respondent at trial that certain income reported by Mrs. Balis from the trust should be deleted if the Court finds the trust was a sham, and also to reflect the holdings herein, Decisions will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code as amended and in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
1. Respondent also determined additions to tax under sec. 6653(a)(2)↩ in the amount of 50 percent of the interest due on the underpayments of tax.
2. Petitioner described his understanding of a "populace philosophy" as "a philosophy promoted to help maintain the freedom of the people from Government and keeping the Government as a servant of the people rather than a master of the people." Webster's Ninth New Collegiate Dictionary (1985) defines "populist" as "a member of a political party claiming to represent the common people" or "a believer in the rights, wisdom, or virtues of the common people".↩
3. The pastureland was not leased to petitioner. Petitioner testified that a neighbor leased that property from the trust. The trust also reported income from lease of a laboratory analyzer to a medical clinic in Alabama. No documentation of these leases was provided at trial.↩