T.C. Memo. 1996-123

UNITED STATES TAX COURT

RONALD H. BRADSHAW AND MONICA I. BRADSHAW, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19739-93.                    Filed March 12, 1996.

<u>Bob J. Shelton</u> and <u>James L. Kissire</u>, for petitioners.

<u>Michael C. Prindible</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WHALEN, <u>Judge</u>:  Respondent determined the following
deficiency in, and addition to, petitioners' 1989 income
tax:

|  | Addition to Tax |
| Deficiency | Sec. 6651(a)(1) |
| $254,336.56 | $65,880.58 |

All section references are to the Internal Revenue Code, as in effect during 1989.  References to petitioner in this opinion are to Mr. Ronald H. Bradshaw.

The issues for decision are:  (1) Whether income realized by petitioners during 1989 in the amount of $886,026 should be characterized as income from the discharge of indebtedness or income from an illegal check-kiting scheme; and (2) whether petitioners are liable for the addition to tax under section 6651(a)(1) for failing to file a timely return.  As to the first issue, if we agree with petitioners that the subject income is from the discharge of indebtedness, pursuant to section 61(a)(12), then it is not includable in petitioners' gross income for 1989 because they were insolvent during that year by more than the amount of the income.  Sec. 108(a)(1)(B).

                    FINDINGS OF FACT

Some of the facts have been stipulated by the parties. The Stipulation of Facts filed by the parties, together with the exhibits attached thereto, is incorporated herein by this reference.  When petitioners filed the instant petition, they resided in Arlington, Texas.

Petitioner was the sole stockholder and president of Motion, Inc., a corporation engaged in the business of

selling automobiles.  Prior to 1988, Motion, Inc., had a line of credit with Colonial National Bank (Colonial Bank) located in Fort Worth, Texas, which Motion, Inc., used to finance its purchase of automobiles.  During the 1980's, Colonial Bank's lending limit was approximately $300,000. When, as sometimes happened, the balance of the amount borrowed by Motion, Inc., under the line of credit exceeded that limit, Colonial Savings & Loan, a related corporation, funded the excess borrowing.  Prior to 1988, the amount borrowed under the line of credit reached a high of approximately $750,000.

As collateral to secure the repayment of amounts borrowed under the line of credit, petitioner executed a security agreement on March 18, 1987, as "PRESIDENT/OWNER" of Motion, Inc.  The security agreement gave Colonial Bank a security interest in all of the inventory, accounts, and other rights to payment owned by Motion, Inc.  As further collateral, the bank maintained possession of the titles to the automobiles that Motion, Inc., financed under the line of credit.  Petitioner was not personally liable for repayment of the loans extended to Motion, Inc., under the line of credit, and he did not personally guarantee their repayment.

Sometime during 1988, the officers of both Colonial Bank and Colonial Savings & Loan became uncomfortable with

the line of credit extended to Motion, Inc. Both Colonial Bank and Colonial Savings & Loan stopped making advances to Motion, Inc., and the outstanding balance of the line of credit was eventually paid off prior to 1989.

After 1988, petitioner continued to maintain a checking account at Colonial Bank, and the bank provided "draft services" to him. Under this arrangement, petitioner would purchase an automobile and he would pay for it with an "envelope draft", an instrument that resembles a check. The seller of an automobile would place the title to the automobile in the envelope and would send the draft and the envelope through regular banking channels. When the envelope draft arrived at Colonial Bank, the bank would pay the draft to the presenting institution out of funds provided by petitioner, and petitioner would receive the title. The bank charged a fee for this service.

Eventually, Colonial Bank was called upon to pay drafts in the $200,000 range. Often, petitioner did not have sufficient funds in his account at Colonial Bank to pay an envelope draft, and a representative of the bank would contact him to determine how petitioner intended to pay the draft. From time to time, petitioner would deposit a check drawn by Motion, Inc., on its account at Tarrant Bank located in Fort Worth, Texas. Mr. Clark Kemble,

president of Colonial Bank, would authorize the extension of provisional credit to petitioner in the amount of the deposit, and the bank would pay the envelope draft.

The tax deficiency at issue in this case is based upon four checks that petitioner deposited into his personal account at Colonial Bank in August 1989. Each of those checks was drawn on Motion, Inc.'s account at Tarrant Bank and was made payable to the "R.H. Bradshaw Car Account", petitioner's personal account at Colonial Bank. Motion, Inc., did not have sufficient funds in its Tarrant account to pay the checks and, in due course, Tarrant Bank returned the checks to Colonial Bank unpaid. The following is a list of the checks that were deposited into petitioner's account at Colonial Bank, the date each check was deposited, and the date each check was returned unpaid:

| Check No. | Amount | Deposit Date | Date Returned Unpaid |
|-----------|--------|--------------|----------------------|
| 11401 | $235,617 | 8/10/89 | 8/24/89 |
| 11423 | 237,488 | 8/14/89 | 8/22/89 |
| 11425 | 220,481 | 8/14/89 | 8/21/89 |
| 11426 | 192,440 | 8/15/89 | 8/22/89 |
| Total | 886,026 | | |

Based upon petitioner's deposits of the above checks

into his account at Colonial Bank, the bank cleared for payment and paid four outstanding checks that petitioner had drawn on his account to the order of "Harbour View Fleet & Leasing".  The record does not describe the relationship of that entity to petitioner or the nature of the payments petitioner made to it.  The following is a list of the amounts and dates of the four checks cleared from petitioner's account at Colonial Bank:

| Check Amount | Date Cleared |
|---|---|
| $235,533 | 8/11/89 |
| 216,149 | 8/14/89 |
| 241,819 | 8/14/89 |
| 192,439 | 8/16/89 |
| Total    885,940 | |

The parties to this case have stipulated that Colonial Bank suffered a loss during 1989 in the amount of $886,026, the aggregate amount of the checks that Tarrant Bank returned due to insufficient funds, as opposed to $885,940, the aggregate amount of the checks paid by Colonial Bank. Similarly, petitioners admit receiving income from Colonial Bank during 1989, in the amount of $886,026.  At all times during 1989, petitioners were insolvent by more than $886,026.

When the Motion, Inc., checks were returned unpaid,

officers of Colonial Bank concluded that petitioner had engaged in a check-kiting scheme designed to defraud the bank. Accordingly, on or about August 28, 1989, Colonial Bank reported the check-kiting scheme to the Office of the Comptroller of the Currency, the Federal Bureau of Investigation, and the Office of the U.S. Attorney, using a Criminal Referral Form (Long Form), prescribed by the Office of the Comptroller of the Currency. The Criminal Referral Form describes the scheme, as follows:

> Mr. Bradshaw was depositing large items to his personal account at Colonial National Bank (CNB) drawn on his Motion, Inc. #013000871 account at Tarrant Bank of Fort [sic] (TB). Items clearing on his CNB account were in very similar large amounts payable to a business in Canada, usually dated a day or two before deposit at CNB. We understand that a similar activity was occurring at TB.

In addition to filing the Criminal Referral Form with Federal authorities, Colonial Bank filed suit against petitioner, Motion, Inc., and Tarrant Bank in a Texas court seeking to recover the amount it had lost as a result of petitioner's check-kiting scheme. Colonial Bank's petition included a group of allegations entitled "CLAIM FOR REIMBURSEMENT", under which the bank alleged that it had relied upon the four checks drawn by Motion, Inc., in the aggregate amount of $886,026, that had been deposited into petitioner's account before it cleared for payment checks

drawn by petitioner in the same approximate amount. Based thereon, the bank alleged that petitioner and Motion, Inc., "are accountable and liable for the amount of the checks in question." Colonial Bank's claim for reimbursement states as follows:

> 7. Plaintiff [i.e., Colonial Bank] has informed the Defendants Motion, Inc. and R.H. Bradshaw that the Defendants are accountable to Plaintiff for the amount of the checks in question and demanded that the Defendants reimburse Plaintiff for the sum of $886,026.00. Despite the demand to pay Plaintiff, the Defendants have failed and refused and still fail and refuse to pay Plaintiff.
>
> 8. Plaintiff is in possession of the checks with endorsement supplied by Plaintiff pursuant to section 4.205 Tex. Bus. Comm. Code and were delivered by R.H. Bradshaw to Plaintiff. Plaintiff took the checks for value, in good faith, and without notice that they were overdue or had been dishonored or of any defense against the claim to them on the part of any person. By reason thereof, Plaintiff is a holder in due course. A copy of the August 14, 1989 checks and the August 15, 1989 check is attached as Exhibits "A", "B" and "C".

Colonial Bank's petition included another group of allegations entitled "JUDICIAL FORECLOSURE OF SECURITY INTEREST" under which Colonial Bank sought to recover the amount of its loss from Motion, Inc., through foreclosure of the bank's security interest in all of the assets of, and payments due to Motion, Inc. Those allegations are as follows:

## JUDICIAL FORECLOSURE OF SECURITY INTEREST

9. On March 18, 1987 Defendant Motion, Inc. duly executed a security agreement to secure the payment of every debt, liability and obligation of every type and description which Motion, Inc. may incur to Plaintiff. The security agreement granted Plaintiff a security interest in all inventory, accounts and other rights to payment. A copy of this agreement is attached as Exhibit "D" and incorporated by reference the same as if fully copied and set forth at length.

10. As reflected above, the Defendant Motion, Inc. is indebted to the Plaintiff in the sum of $886,026.00. The Plaintiff has requested that the Defendant pay the amount owed but the

> Defendant has failed and
> refused and still fails and
> refuses to pay the Plaintiff.

11. By reason of these defaults, and in accordance with the terms of the security agreement, Plaintiff has made demand upon the Defendant Motion, Inc. for the payments of the amounts due and has notified the Defendant Motion, Inc. of the debt being due.

12. On September 30, 1985, Plaintiff perfected a security interest by filing a financing statement in due form with the Secretary of State, Travis County, Texas.

13. Plaintiff, by virtue of the security agreement, is entitled to have the security interest foreclosed, to have a sale directed, and to have the proceeds applied to satisfy the debt owing to Plaintiff by Defendant Motion, Inc.

14. The Defendant Tarrant Bank has filed a financing statement claiming a security interest inferior to the security interest of Plaintiff. Plaintiff on information and belief alleges that the proceeds from the sale of inventory of Defendant Motion, Inc. subject to the superior security interest of Plaintiff have been and may be in the future paid to Tarrant Bank. These

funds paid constitute proceeds in which Plaintiff holds a valid superior security interest. Therefore, all proceeds on or after August 14, 1989 received by Tarrant Bank are due and owing to the Plaintiff. The Plaintiff has demanded that the Tarrant Bank pay all proceeds from the sale of inventory to the Plaintiff. The Defendant Tarrant Bank has failed and refused and still fails and refuses to pay Plaintiff.

Neither petitioner nor Motion, Inc., entered an appearance when Colonial Bank's suit was called for trial in the State court. On October 24, 1989, the State court entered the following default judgment against petitioner and Motion, Inc.:

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that judgment by default is hereby rendered against Defendants, R.H. Bradshaw and Motion, Inc., in the total amount of $887,026.00 plus all costs of court herein expended and post-judgment interest at the rate of 10% per annum until paid and Plaintiff's security interest in Defendant Motion, Inc.'s inventory, accounts, and rights to payment is deemed perfected, valid and of full force and effect for which execution may issue.

In 1994, petitioner pled guilty in the U.S. District Court for the Northern District of Texas to violating two counts of 18 U.S.C. sec. 1344. The version of 18 U.S.C. sec. 1344 that was in effect at the time petitioner deposited the worthless checks provided as follows:

Whoever knowingly executes, or attempts to execute, a scheme or artifice--

        (1) to defraud a financial
institution; or

        (2)  to obtain any of the moneys,
funds, credits, assets, securities, or
other property owned by, or under the
custody or control of, a financial
institution, by means of false or
fraudulent pretenses, representations,
or promises;

shall be fined not more than $1,000,000 or
imprisoned not more than 20 years, or both.
[Financial Institutions Reform, Recovery, and
Enforcement Act of 1989, Pub. L. 101-73, sec.
961(k), 103 Stat. 500.]

The criminal violations to which petitioner pled guilty
were based upon his deposit of the four worthless checks
into his account at Colonial Bank, as described above.
The District Court accepted petitioner's guilty plea and
sentenced him to a term in jail.  It also ordered
petitioner to make restitution to Colonial Bank in the
amount of $886,026.

Sometime after petitioner's check-kiting scheme
collapsed, Colonial Bank was merged into Colonial Savings
& Loan.  Neither Colonial Bank nor its successor, Colonial
Savings & Loan, has released or canceled the default
judgment that Colonial Bank obtained against petitioner
in the State court.  Colonial Bank has recovered only
approximately $2,000 of the amount it lost from
petitioner's check-kiting scheme.  As of the trial of the
instant case in this Court, Colonial Bank had made no other

effort to collect under the default judgment rendered by the State court, or the restitution ordered by the Federal District Court. Colonial Bank has deducted the amount of its loss for Federal income tax purposes.

Petitioners filed their joint 1989 income tax return on or about August 3, 1992. There was attached to the return a document entitled, "Disclosure Statement Under Code Section 661 [sic] Schedule C, Line1 [sic]." That document states as follows:

> This return omits receipt of Income (Form 1099 from Colonial National Bank in the amount of $886,069.00). 1989 [sic] under Code Section 108(a)(1), and as applicable, Sections 1017(a)(1); 1017(2)(2) [sic], subsection (b)(2)(D) or (b)(5) of Section 108.

The notice of deficiency issued to petitioners in this case states as follows:

> It is determined that since your income tax return for the tax year 1989 was not filed within the time prescribed by law and you have not shown that the failure to file on time was due to reasonable cause, twenty-five percent of the tax is added as provided by section 6651(a) of the Internal Revenue Code. * * *
>
>      *   *   *   *   *   *   *
>
> Schedule 1-A
> Explanation of Adjustments
>
> A.    It is determined that during the taxable year 1989 you received taxable income of $886,000.00 from Colonial National Bank which was not reported on your income tax

return.  Accordingly, your taxable income
is increased $886,000.00.

OPINION

The issues in this case grow out of the fact that in August 1989, petitioner deposited four worthless checks totaling $886,026 into his account at Colonial Bank. Petitioner had drawn the worthless checks to his order on the account of his wholly owned corporation, Motion, Inc., at another bank.  Relying on those deposits, Colonial Bank paid four other checks that petitioner had drawn in the same approximate amount.  Petitioner thereby fraudulently obtained approximately $886,000 from Colonial Bank.  When officials of the bank became aware that the checks deposited into petitioner's account had been drawn on an account in which there were insufficient funds to pay them, Colonial Bank made a criminal referral of the check-kiting scheme to the Office of the Comptroller of the Currency and other Federal authorities, and it filed suit against petitioner, and Motion, Inc., to recover the amount of its loss.  Subsequently, petitioner pled guilty to two counts of violating 18 U.S.C. sec. 1344, relating to bank fraud.

In the notice of deficiency at issue in this case, respondent determined that petitioner had realized taxable income in the amount of $886,000, the proceeds of petitioner's fraud against Colonial Bank.  Petitioners

bear the burden of disproving respondent's determination. Rule 142, Tax Court Rules of Practice and Procedure.

Petitioners boldly assert that the funds obtained from Colonial Bank "were neither swindled, embezzled or [sic] misappropriated". According to petitioners, Mr. Bradshaw obtained those funds from Colonial Bank as a loan. To establish "a bona fide debt obligation", petitioners rely on the prior course of dealing between Mr. Bradshaw and Colonial Bank, the security agreement between Motion, Inc., and Colonial Bank, the original petition filed by Colonial Bank in State court to initiate suit against petitioner and Motion, Inc., and the default judgment rendered by the State court in that case.

According to petitioners, a debt obligation to Colonial Bank arose when the four worthless checks were returned unpaid. Petitioners contend that "this is the same type of transaction that Petitioner Ronald Bradshaw [had] participated in numerous times with Colonial prior to the date the four (4) checks were returned." They further contend that "the Security Agreement was entered into for the sole purpose of securing the type of extensions of credit which is the subject of this dispute." Petitioners point to Colonial Bank's suit in State court and assert that "The Default Judgment was granted exclusively on the Security Agreement and the banking relationship which

existed between Petitioner and Colonial, further supporting the fact that the transaction at issue created an enforceable, and secure transaction."

Petitioners also take the position that the loan obtained from Colonial Bank was discharged.  While petitioners are vague about when the discharge took place, their position must be that the loan was discharged in 1989.  In this connection, petitioners' brief asks the Court to make the following findings of fact:

> 10.  Colonial is no longer enforcing its rights to pursue Petitioners for the recovery of the $886,026.00.

> 11.  Colonial has never sought to have a Writ of Execution issued on the Default Judgment. [Record references omitted.]

Petitioners' brief makes the following argument:

> Colonial took a tax deduction for the loss attributable to Petitioner, Ronald Bradshaw's debt.  Colonial has indicated that it is not pursuing Petitioner, Ronald Bradshaw for the repayment of the $886,026.00.  Colonial has also never asked the sheriff to issue a Writ of Execution on the aforementioned Default Judgment. Colonial's officers indicated that it was the policy of Colonial to issue 1099's whether or not such income related to kiting losses or any losses on any loans.

In summary, petitioners concede that they received income during 1989 in the amount of approximately $886,000. However, they contend that the income was from the

discharge of Colonial Bank's loan to Mr. Bradshaw, and not from the illegal check-kiting scheme to which Mr. Bradshaw pled guilty.  Petitioners further contend that the income from Colonial Bank's discharge of its loan is not includable in petitioners' income because they were insolvent by more than the amount discharged.  Sec. 108(a)(1)(B).

We disagree with petitioners' factual contention that Mr. Bradshaw received the proceeds of the illegal check-kiting scheme as a loan or other bona fide indebtedness from Colonial Bank.  While petitioner may have had a legal obligation to repay the funds that he had fraudulently obtained from the bank, the transaction did not involve a loan because a distinguishing characteristic of a loan, the intention of the parties that the money advanced be repaid, was missing.  See Moore v. United States, 412 F.2d 974, 978-980 (5th Cir. 1969); United States v. Rochelle, 384 F.2d 748, 751 (5th Cir. 1967); Sowell v. Commissioner, 302 F.2d 177, 181 (5th Cir. 1962), revg. T.C. Memo. 1961-115. In this case, there was no "consensual recognition" by both petitioner and the bank of an obligation to repay and the exact conditions of repayment.  E.g., Moore v. United States, supra at 979-980.

We do not accept petitioner's assertion that he obtained the proceeds of his check-kiting scheme from

Colonial Bank through the same course of dealing with the bank as was involved with the draft services described above, or that petitioner's prior course of dealing with the bank involved loans from the bank. Contrary to petitioner's assertions, his prior course of dealing with Colonial Bank was limited to the extension of provisional credit for deposits into his account. The record of this case shows that the bank officials who authorized the provisional credit expected that the checks deposited into petitioner's account reflected funds on deposit in another banking institution and that the funds would be collected in due course. The situation in the case of each of the four worthless checks is different. There is no evidence that the bank officials knew that the four checks were worthless or that they intended to make loans to petitioner when the checks were returned unpaid.

In an attempt to support their position that Mr. Bradshaw's course of dealing with the bank involved loans, petitioners point to the fact that Colonial Bank had extended a line of credit to Motion, Inc., and the fact that the line of credit was secured by the security agreement that had been executed on March 18, 1987, between Motion, Inc., and the bank. Furthermore, at one point, petitioners' reply brief states: "Motion, Inc. is a sole proprietorship of petitioner."

Contrary to these assertions, there is no evidence in the record to suggest that Motion, Inc.'s line of credit and security agreement had anything to do with petitioner in his individual capacity, as opposed to his capacity as corporate officer of Motion, Inc.  There is also no evidence to suggest that Motion, Inc., was not a validly existing corporation and thus a separate entity from petitioner.  In fact, petitioner's opening brief refers to Motion, Inc., as "a wholly owned corporation of Petitioner, Ronald Bradshaw", and petitioners' reply brief refers to it as "Petitioner's wholly owned corporation, Motion, Inc."

Colonial Bank's original petition, by which it initiated suit against petitioner and Motion, Inc., does not suggest that the proceeds of petitioner's check-kiting scheme had been obtained through a bona fide indebtedness. To the contrary, the principal claim in the original complaint was a "CLAIM FOR REIMBURSEMENT" under which Colonial Bank sought to hold petitioner and Motion, Inc., liable based upon the fact that petitioner had deposited into his account at Colonial Bank worthless checks drawn on the account of Motion, Inc., in Tarrant Bank, and the fact that Colonial Bank was a holder in due course with respect to each of those checks.  The original petition also sought to foreclose its security interest in assets owned by or due to Motion, Inc., and to obtain any proceeds that had

been received by Tarrant Bank from the sale of inventory owned by Motion, Inc.  The original petition filed by Colonial Bank in State court cannot reasonably be read to suggest that any of the funds at issue in that case had been obtained by petitioner through a loan from Colonial Bank.

Finally, the default judgment issued by the State court deemed perfected Colonial Bank's security interest in the inventory, accounts, and rights to payment owned by Motion, Inc., and it rendered a default judgment against petitioner and Motion, Inc., in the amount of Colonial Bank's loss.  However, the default judgment does not constitute an adjudication that petitioner had obtained the funds from Colonial Bank through a bona fide indebtedness.

The second issue in this case involves respondent's determination that petitioners are liable for the addition to tax under section 6651(a) for failing to file a timely return.  Petitioners bear the burden of disproving respondent's determination.  E.g., Reily v. Commissioner, 53 T.C. 8, 14 (1969).

Petitioners failed to introduce any testimony or other evidence concerning this issue at trial, and they did not raise the issue in their post-trial briefs.  Therefore, we find that petitioners, if they have not conceded the issue, have failed to meet their burden of proof, and we sustain

respondent's determination on this issue.

<u>Decision will be entered</u>

<u>for respondent</u>.