BETTY R. AND RICHARD G. CARRAWAY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Carraway v. Commissioner
Docket No. 7975-92
United States Tax Court
T.C. Memo 1994-295; 1994 Tax Ct. Memo LEXIS 298; 67 T.C.M. (CCH) 3139; June 27, 1994, Filed *298 Decision will be entered for respondent. For petitioners: Eugene Bernstein, Jr. and Michelle L. Morris. For respondent: William W. Kiessling. COUVILLION
COUVILLION
MEMORANDUM OPINION COUVILLION, Special Trial Judge: This case was heard pursuant to section 7443A(b)(3) [1] and Rules 180, 181, and 182. Respondent determined deficiencies of $ 1,147 and $ 7,842, respectively, in petitioners' Federal income taxes for 1988 and 1989, the addition to tax under section 6653(a)(1) in the amount of $ 57.35 for 1988, and the penalty under section 6662(a) for 1989 in the amount of $ 1,568.40 for negligence or disregard of rules or regulations under section 6662(b)(1). The issues for decision are: (1) Whether petitioners are entitled to deduct, for 1988, under section 166(a), as a business bad debt, amounts advanced by Richard G. Carraway *299 (petitioner) to a corporation in which he was an officer and shareholder and other advances to a shareholder in the same corporation, and (2) whether petitioners are liable for the addition to tax and penalty for negligence. An adjustment in the notice of deficiency to petitioners' self-employment tax under section 1401(a) for 1988 is a computational adjustment that will be resolved by the contested issues. If the Court concludes that petitioners are entitled to a business bad debt deduction for 1988, petitioners will also be entitled to the carry forward of a net operating loss to 1989. Some of the facts were stipulated and are found accordingly. The stipulation and attached exhibits are incorporated herein by reference. Petitioners, husband and wife, resided at Dyersburg, Tennessee, when they filed their petition. On their 1988 Federal income tax return, petitioners claimed a business loss deduction in the amount of $ 186,098.24. This amount consisted of $ 160,809.45 for amounts advanced to Pinnacle Fiberglass Corp. (Pinnacle) and $ 25,288.79 advanced to an individual, Sammie Smith, who was a stockholder in Pinnacle. In the notice of deficiency, respondent disallowed the *300 amount claimed as a business bad debt but allowed the $ 186,098.24 as a nonbusiness bad debt. Petitioners contend they were in the trade or business of lending money, and the loans in question were made in connection with that trade or business activity. Respondent disagrees with that, but agreed, at trial, that the $ 186,098.24 was worthless and the year in which the indebtedness became worthless was 1988. Petitioners lived in Dyersburg, Tennessee, for over 20 years. Dyersburg has a population of between 16,000 and 18,000 people. Petitioner owns a retail clothing sales business bearing the trade name "Sir Richard's Men's Store" (Sir Richard's) in Dyersburg and is also a partner in a partnership, Carraway and White, a factoring company. In addition, petitioner has been engaged in other businesses involving environmental and consulting work. Petitioner spends a substantial amount of his time at Sir Richard's. Petitioner appears willing to participate in a variety of ventures if there is a potential for profit. In 1985, petitioner agreed to lend $ 2,000 to a personal friend, Mike Pence. Mr. Pence attended college with petitioner and had known petitioner for over 20 years. *301 At the time the loan was made, in September 1985, Mr. Pence approached petitioner because he needed money to open a retail business selling Christmas items. Mr. Pence agreed to repay petitioner as soon as possible from amounts received from the sale of goods in his new business. There was no written promissory note, no collateral, and "no interest was discussed". It was a "handshake" deal. The loan was repaid one month later. In addition, Mr. Pence provided Sir Richard's an in-store display of a Christmas tree and decorations in consideration for the loan. In 1986, petitioner became involved with Pinnacle, a Tennessee corporation. Pinnacle was engaged in the manufacture of fiberglass tubs, showers, and whirlpools. On July 29, 1986, petitioner paid Pinnacle $ 6,507 for 241 shares of Pinnacle common stock. At the time of the stock purchase, petitioner and Pinnacle entered into an agreement as to the stock purchase and a related lending arrangement. The document, dated July 26, 1986, stated that "As of the date of this Agreement, Offeror [petitioner] has loaned $ 38,287.67 to Pinnacle." Petitioner received a promissory note from Pinnacle dated July 29, 1986, for $ 38,287.67, *302 bearing interest at the rate of 10 percent per annum (the 1986 Pinnacle note). No amount has ever been received by petitioner for payment of either this note or interest, and petitioner has never enforced his rights as a creditor on this note. On a schedule attached to the July 29, 1986, agreement just described, the following information was shown: the name of the nine Pinnacle shareholders at that time, the number of shares owned by each, the amount each paid for their shares at $ 27 per share, the "total loan" amount that each shareholder agreed to at $ 240 per share, the "present loan" amount for each at $ 158.87 per share owned, and the total dollar commitment to Pinnacle by each shareholder. [2]
Petitioner was an officer of Pinnacle during 1987 and received an amount of compensation *303 not exceeding $ 14,750 in his capacity as treasurer for Pinnacle in 1987. Petitioner did not devote a substantial amount of time to performing duties in his capacity as an officer of Pinnacle. Petitioner paid or advanced the following amounts to Pinnacle in 1987 and 1988: Check Number
Date
Amount
0996
9/11/87
$  25,000.00
1014
9/26/87
25,000.00
0172
11/6/87
10,809.45
0178
1/11/88
30,000.00
1138
2/4/88
20,000.00
0184
2/13/88
25,000.00
0101
3/1/88
10,000.00
0102
7/29/88
25,000.00
1010
8/26/88
20,000.00
Total
$ 190,809.45
With the exception of check numbers 0178 and 0101 of $ 30,000 and $ 10,000, respectively, the parties agree that the amounts listed above were loans made to Pinnacle and, therefore, constituted debt and not equity. Check numbers 0178 and 0101 listed above were paid to Pinnacle with a notation on both checks indicating they were for a "stock purchase". The loans to Pinnacle were made without contemporaneous promissory notes issued to petitioner, and no collateral or security was required. The terms for repayment and interest, if any, were not documented at the time the loans were made. Petitioner believed Pinnacle would soon be *304 profitable, and, at that time, he would be repaid. However, during 1987 and 1988, Pinnacle was in a poor financial condition and reported net losses on its Federal income tax returns. Due to Pinnacle's financial situation, petitioner and the other shareholders personally guaranteed large sums of Pinnacle debt to third parties, exceeding $ 2 million On January 20, 1988, petitioner paid Pinnacle $ 25,288.79 to allow another individual, who was already a shareholder, Sammie Smith, to purchase additional Pinnacle stock. Mr. Smith executed a promissory note in favor of petitioner to reflect the transaction (the Smith note). Petitioner's loan was secured by the stock purchased. Petitioner was never repaid any of the amounts loaned to Sammie Smith. On March 1, 1988, petitioner was issued another stock certificate, evidencing additional shares of Pinnacle stock. The certificate shows that petitioner was issued 378.39 shares of stock. Pinnacle kept no formal stock register. On November 14, 1988, a shareholder agreement was entered into in which petitioner would dispose of his interests in Pinnacle in exchange for release from his personal guarantees of Pinnacle debt. To complete *305 the transaction, a promissory note was drawn up on December 30, 1988, in the amount of $ 160,809.45 (the 1988 Pinnacle note), reflecting petitioner's loans to Pinnacle. There is no evidence in the record that the creditor or creditors of Pinnacle consented to or gave releases to petitioner and the other stockholders of their personal guarantees of Pinnacle's debts. As noted earlier, the 1988 Pinnacle note of $ 160,809.45 and the Smith note of $ 25,288.79 make up the worthless debt at issue in this case. Petitioner's following activities did not involve Pinnacle. In 1989 or 1990, petitioner loaned $ 2,500 to a friend, Johnny Hulgan. Mr. Hulgan needed the funds to purchase equipment used in his photography business. The principal amount and interest on the loan were repaid over a 2-year period in monthly installments. No written documents were prepared to evidence the transactions, and the loan agreement was only verbal. In 1991, petitioner loaned $ 15,000 to another friend, Robert Hendrix. Mr. Hendrix's accountant was a mutual friend of him and petitioner and referred Mr. Hendrix to petitioner. Mr. Hendrix remembered signing a note, but the note was not produced at trial. *306 The loan was repaid in approximately 3 or 4 months with an uncertain amount of interest. Lastly, petitioner made a loan in the amount of approximately $ 3,600 to a friend, Dennis Coleman, in 1992. Mr. Coleman had known petitioner for 10 to 15 years. No note was prepared for this loan as the transaction was referred to as another "handshake deal". Mr. Coleman anticipated receiving a tax refund but needed money immediately. The loan was made in the last week of February, and the principal amount was repaid in March of the same year. Mr. Coleman allowed petitioner the use of a display booth owned by Mr. Coleman in Sir Richard's for approximately 2 weeks in consideration for the short-term loan. These three individuals approached petitioner for loans, since they believed that petitioner was a businessman who would have the financial ability to make the loans, that other lending institutions would not view them as worthy credit risks, and that petitioner would be willing to lend them the money. The principal amounts of the three loans described above were repaid in full. With each of the loans in the years after petitioner's involvement with Pinnacle, there is no evidence that *307 promissory notes were executed, that collateral or security was required, or that books, records, or ledgers were maintained with respect to the loans. Petitioner kept up with the repayments, using deposit slips. Petitioner did not advertise or solicit business as a lender. Before petitioner's involvement with Pinnacle, and long before the loans to the individuals just described, petitioner, in 1982, purchased a piece of machinery that he leased to a local knife manufacturing company. Under this leasing arrangement, petitioner was allowed an investment tax credit and thereafter received lease payments from the lessee. Petitioner's investment in this machinery was $ 285,000. On their 1988 income tax return, petitioners claimed an ordinary loss deduction for a "Business Bad Debt, Loans Uncollectible" in the amount of $ 186,098.24. This amount was shown on a Schedule C, Profit or Loss from Business, separate from a Schedule C for petitioner's retail clothing sales business. The only other information on the Schedule C for the business bad debt was petitioner's name and Social Security number. As noted earlier, the $ 186,098.24 consisted of the $ 160,809.45 1988 Pinnacle note *308 and the $ 25,288.79 petitioner loaned to Sammie Smith to enable Mr. Smith to purchase additional Pinnacle stock. As a result of the claimed deduction, petitioners realized a net operating loss in the amount of $ 172,539.27, which petitioners carried over to their 1989 income tax return. In 1988, petitioners also claimed a long-term capital loss in the amount of $ 23,947.54 on Schedule D, Capital Gains and Losses, that was described as due to a November 1988 transaction involving Pinnacle stock. Respondent determined that the amount of $ 186,098.24 was not allowable as a business bad debt deduction "because the amount represents a nonbusiness bad debt rather than an ordinary loss". However, respondent determined that the $ 186,098.24 and the $ 23,947.54 Schedule D loss were allowable as short-term capital losses in 1988, resulting in a capital loss carryover to 1989. [3]
At trial, petitioners claimed *309 that they are entitled to a business bad debt deduction for 1988 in the amount of $ 264,385.91 instead of the $ 186,098.24 claimed on their 1988 return. This amount is $ 78,287.67 greater than the deduction claimed on their 1988 return. It is petitioners' position that they are entitled to this greater amount because the 1988 Pinnacle note did not reflect all amounts petitioner had loaned to Pinnacle. Petitioners, however, did not allege in their petition their entitlement to a $ 264,385.67 business bad debt deduction for 1988 nor was this claim advanced prior to trial. Respondent, on brief, objects to any consideration of a loss in excess of $ 186,098.24. The additional amounts claimed by petitioners as a business bad debt deduction are for the following items: $ 38,287.67
-
1986 Pinnacle note
30,000.00
-
Check No. 0178
10,000.00
-
Check No. 0101
$ 78,287.67
-
Total
Respondent concedes that $ 186,098.24 of the amounts advanced to Pinnacle, and claimed by petitioners on their 1988 income tax return, were loans, and that these loans became worthless in 1988. However, it is respondent's position that petitioner was not in the trade or business of lending *310 money, and, even if petitioner was in the trade or business of lending money, the amounts paid to Pinnacle were not proximately related to that trade or business. Thus, respondent contends the $ 186,098.24 is allowable only as a nonbusiness bad debt deduction. Respondent contends that the $ 186,098.24 is the only amount properly before the Court; however, if the additional $ 78,287.67 is properly at issue, the check numbers 0178 and 0101 represent amounts paid by petitioner to purchase additional Pinnacle stock, and, therefore, these amounts did not constitute loans or advances. Respondent further contends that petitioner never paid or advanced any amount in exchange for the 1986 Pinnacle note of $ 38,287.67; therefore, there was no indebtedness for $ 38,287.67. The determinations by respondent in a notice of deficiency are presumed correct, and the burden of proof is on the taxpayer to prove that the determinations are in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Section 166(a) allows a deduction for any business debt that becomes worthless during the taxable year. Section 166(d)(1) provides that section 166(a) shall not apply *311 to any nonbusiness debt. A nonbusiness debt is defined in section 166(d)(2) as a debt other than (1) a debt created or acquired in connection with a trade or business of the taxpayer or (2) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business. The question whether a debt is a nonbusiness debt is a question of fact in each particular case. Sec. 1.166-5(b), Income Tax Regs.
For petitioners to be entitled to any amount as a business bad debt deduction, they must establish that petitioner was in the trade or business of lending money during the years in question; in addition, if petitioners are able to establish that fact, they must show that the loans in question were proximately related to the business of lending money. United States v. Generes, 405 U.S. 93 (1972). Generally, a trade or business is an activity that is pursued full time, in good faith, with continuity and regularity, and for the production of income. Commissioner v. Groetzinger, 480 U.S. 23, 25 (1987). Whether the taxpayers are engaged in a trade or business is a question of fact. Commissioner v. Heininger, 320 U.S. 467, 475 (1943); *312 Walliser v. Commissioner, 72 T.C. 433, 437 (1979). In relation to activities involving the lending of money, this Court has held that the right to claim bad debts as business losses is applicable only to the exceptional situations where the taxpayer's activities in making loans has been regarded as so extensive and continuous as to elevate that activity to the status of a separate business. Imel v. Commissioner, 61 T.C. 318, 323 (1973). The taxpayer needs to establish that he was in the trade or business of lending money during the years when the loans that became uncollectible were made. Ruppel v. Commissioner, T.C. Memo. 1987-248. Factors which have been considered in determining whether a taxpayer is engaged in the trade or business of lending money include: the number of loans made by the taxpayer; the time period over which such loans were made; the adequacy and nature of the taxpayer's records; the amount of time devoted to the lending activity; whether the taxpayer actively sought out lending business; whether the taxpayer advertised or maintained a separate office for the business; *313 the maintenance of separate books and accounts for the business, or profit and loss statements; the taxpayer's general reputation in the community as a lender; and the relationship of the debtors to the taxpayer-lender. United States v. Henderson, 375 F.2d 36, 41 (5th Cir. 1967). Petitioner alleges that the first loan to Pinnacle in the amount of $ 38,287.67 was made in 1986, and respondent agrees that the first loan to Pinnacle was no later than 1987. Before 1986, the only evidence of petitioner's lending activities was the loan to his long-time friend, Mike Pence, in the amount of $ 2,000 in 1985. No promissory note was prepared, and no interest rate was discussed. It was a "handshake" deal made between friends. In addition, petitioner relies on the equipment lease with the knife manufacturing company in 1982 as evidence of lending activity. Thus, before the advances to Pinnacle, petitioner's lending activity was limited to a single personal loan and the financing of an equipment lease. Petitioner then made nine advances to Pinnacle and one loan to Sammie Smith over a 2-year period. After that, beginning in 1989 or 1990, petitioner made three *314 additional loans, one a year, to personal friends. These loans, as well as the earlier loan to Mike Pence, were more in the nature of personal loans than business loans. In fact, at trial, most of these loans were referred to as "handshake" loans -- hardly the characterization that a person engaged in the trade or business of lending would apply to business loans. Moreover, the acceptance of services, such as the display units provided by the borrowers for use in petitioner's clothing store, in lieu of interest, hardly is characteristic of a person engaged in the trade or business of lending money. Petitioner kept no books and records of his lending activities except the deposit slips of payments he received on the loans. The record indicates only four loans made over a 7-year period that were actually repaid. When payments on loans were made, the payment was deposited along with the receipts from Sir Richard's, and no separate accounting was made. For income tax purposes, the interest petitioner received was reported as gross receipts or sales income of Sir Richard's and was not separately identified and reported as interest income. Petitioner did not spend any time soliciting *315 lending business, nor did he advertise that he was in the trade or business of lending money. Petitioner did not maintain a separate office for any lending activities. The individuals who did seek out petitioner were either friends or referred by friends. The Court does not find sufficient evidence on this record to conclude that petitioner's activities were so extensive and continuous as to elevate his lending activity to the status of a separate business. Other than the related Pinnacle loans over a 2-year period, there was only evidence of four other loans, three of which were after the years at issue. Petitioner's lending activity, at best, was sporadic and was not so extensive and continuous to elevate his lending to the status of a separate trade or business. On this record, the Court holds that petitioner was not engaged in the trade or business of lending money during the years at issue. Petitioners, therefore, are not entitled to a business bad debt deduction for the amounts claimed. Respondent agrees that $ 186,098.24 is allowable as a nonbusiness bad debt deduction for 1988. However, it is petitioner's position that the amount represented by the 1986 Pinnacle note, *316 $ 38,287.67, and the two checks totaling $ 40,000 were not included in this amount and should also be allowed as deductions for loans to Pinnacle, which became worthless during 1988. On their 1988 income tax return, petitioners claimed $ 186,098.24 as a bad debt deduction. The first time petitioners claimed an amount in excess of this amount was at trial. Respondent, in the notice of deficiency, made no determinations as to an amount in excess of $ 186,098.24. In their petition, petitioners addressed only the deduction claimed on their return and made no allegations that they were entitled to an increased amount as a bad debt deduction. Counsel for respondent was never informed by petitioners prior to trial that they intended to claim an increased amount as a deduction. Respondent objected at trial that amounts in excess of the amount petitioners claimed on their return were not properly before the Court. Issues which are not properly pleaded will not be considered for the first time at trial. Rule 34(b); Estate of Mandels v. Commissioner, 64 T.C. 61, 73 (1975). Whether the opposing party has been given fair notice of an issue determines whether *317 the issue has been properly raised. Rule 31(a); Markwardt v. Commissioner, 64 T.C. 989, 997 (1975). The court must determine whether petitioners' action surprised and prejudiced respondent. Markwardt v. Commissioner, supra; Estate of Horvath v. Commissioner, 59 T.C. 551, 555 (1973). Rule 41(b)(1) provides that: When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. The Court, upon motion of any party at any time, may allow such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues, but failure to amend does not affect the result of the trial of these issues.
In Gerber & Associates, Inc. v. Commissioner, T.C. Memo. 1987-446, affd. without published opinion 876 F.2d 106 (7th Cir. 1989), this Court held that, where the taxpayers did not raise an issue in their petition and did not avail themselves of the Court's procedures for the amendment *318 of their pleadings to raise such issue, the issue was not tried by the express or implied consent of the parties, and, when the taxpayers had substantial time prior to trial to present such issue and failed to do so, the raising of such issue at trial was "too late" and not allowable. This issue was not tried by the express or implied consent of respondent; moreover, respondent was not given fair notice that petitioners would claim a bad debt deduction $ 78,287.67 greater than that claimed on their return and alleged in their petition. Respondent did not concede the worthlessness of this greater amount and did not have the opportunity to prepare to present evidence as to this additional indebtedness. Therefore, the Court finds that the issue of petitioners' entitlement to deductions in excess of $ 186,098.24 is not properly before the Court. Respondent determined that petitioners are liable for the addition to tax under section 6653(a)(1) and the accuracy-related penalty under section 6662(a) for negligence, respectively, for 1988 and 1989. Section 6653(a)(1) provides that, if any part of an underpayment of income tax is due to negligence or intentional disregard of rules or *319 regulations, there shall be added to the tax an amount equal to the sum of 5 percent of the underpayment. Negligence is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). The Commissioner's determination is presumptively correct and will be upheld unless the taxpayers are able to rebut the presumption by showing they used due care. Reily v. Commissioner, 53 T.C. 8 (1969). Section 6662(b)(1) provides an accuracy-related penalty for negligence or disregard of rules or regulations. Section 6662(a) provides for an addition to tax equal to 20 percent of the portion of the underpayment to which the section applies. Under section 6662(c), "'negligence' includes any failure to make a reasonable attempt to comply with the provisions of this title, and the term 'disregard' includes any careless, reckless, or intentional disregard". Petitioners claimed a business bad debt deduction in the amount of $ 186,098.24. Their entitlement to such a deduction under the law is based upon the existence of a trade or business *320 activity that, in this case, would have been the trade or business of lending money. Petitioners' activities in the business of lending money were sporadic and were far short of meeting the requisites of a trade or business activity. Petitioners knew better than to claim their loss as one derived from a business activity. Prior to 1988, petitioners never reported their lending activity as a trade or business on their income tax returns. Petitioner admitted at trial that, in some instances, in lieu of accepting money, he accepted services from his borrowers for the interest due on his loans. On other loans, where interest was paid, those amounts were reported as part of the gross receipts of petitioner's clothing store and were never identified as interest on petitioners' tax returns. Finally, it is evident from the record that the loans and advances to Pinnacle and Sammie Smith were not at all motivated as a lending activity but were more in the nature of advances to shore up a failing business as to which petitioner had personally guaranteed debts of that business in excess of $ 2 million. On this record, petitioners were negligent in claiming that their sporadic lending activities *321 constituted a trade or business. Respondent, therefore, is sustained on this issue. Decision will be entered for respondent.
Footnotes
1. Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The 1986 Pinnacle note in the amount of $ 38,287.67 petitioner received represented the "present loan" liability of $ 158.87 per share described in the agreement dated July 26, 1986, based upon petitioner's ownership of 241 shares.↩
3. See sec. 1211, relating to the limitation on capital losses and sec. 1212, relating to the capital loss carryover.↩